640 P.2d 194

**Phyllis M. REDDEL, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Deer Valley School District # 97, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 2495.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 24, 1981.

Rehearing Denied Jan. 7, 1982.

Review Denied Jan. 26, 1982.

Charles M. Wilmer, P. C., Phoenix, for petitioner.

Calvin Harris, Chief Counsel, Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by James L. Stevenson, Phoenix, for respondents employer and carrier.

## OPINION

FROEB, Presiding Judge.

The sole issue in this special action review of an Industrial Commission award is whether the administrative law judge properly awarded the petitioner scheduled rather than unscheduled permanent disability benefits. We affirm the award.

The petitioner injured her left foot in a 1974 industrial accident arising out of and in the course of her employment with the respondent employer. Her condition required the care of a podiatrist, Myron M. Westerkamp, D.P.M. In June 1977, Dr. Westerkamp reported that her condition was stationary without permanent impairment, noting that osteoarthritis might develop in the future from the injury. On the basis of this report, the respondent carrier issued its June 22, 1977, notice of claim status terminating temporary compensation and determining that the industrial injury caused no permanent disability. Petitioner did not protest this notice and it became final. *See, e.g., Sanchez v. Industrial Commission,* 20 Ariz.App. 143, 510 P.2d 773 (1973); A.R.S. § 23–947.

After her medical release, petitioner returned to her former employment. Her foot continued to cause her pain, however, affecting her ability to work and causing periodic absences from work. On October 31, 1977, she reinjured the same foot. Fol-

lowing this second injury, she was unable to work.

The respondent carrier again accepted her claim for workmen's compensation benefits. On November 19, 1979, it mailed notices of claim status terminating temporary compensation, finding that the injury caused permanent disability, and classifying this disability as scheduled. The petitioner timely requested a hearing to protest these notices.

At the hearings, the petitioner, her payroll supervisor, and two medical experts, Dr. Westerkamp and Gerald C. Moczynski, M.D., appeared. The petitioner testified that the residual effects of her first foot injury impaired her ability to work. The payroll supervisor corroborated this testimony. Dr. Moczynski, who examined the petitioner at the respondent carrier's request following the second industrial injury, testified that she was medically stationary in October 1979 with a five percent functional loss of use of the left leg. Dr. Westerkamp testified that she was medically stationary in December 1979 with a twenty-five percent functional loss of use of the left leg. *In addition, he testified that she actually had a five percent impairment of the left leg in June 1977 when the first injury claim was closed. He explained that his medical report discharging her without permanent impairment was caused by secretarial error.*

In the award issued July 24, 1980, the hearing judge resolved the conflicting medical testimony in favor of Dr. Westerkamp's opinion that the petitioner was stationary as of December 1979 with a twenty-five percent permanent impairment of the left leg. He further found that this impairment was scheduled, as opposed to unscheduled. After the hearing judge affirmed this award on administrative review, the petitioner brought this Special Action Industrial Commission.

On appeal, petitioner concedes that the unprotested June 22, 1977, notice of claim status conclusively determined that the first foot injury caused no permanent impairment and is res judicata. She argues, however, that while the finality of the 1977 award precluded her from proving that the first foot injury caused the permanent *industrial* impairment, she could nevertheless show that the first foot injury caused a permanent *nonindustrial* impairment for purposes of unscheduling the present award. Because the evidence now before the Commission in the present case established that the first foot injury actually caused permanent impairment and that this impairment was disabling at the time of the second foot injury, she concludes that the resulting disability should be unscheduled.[1] This argument is based upon the well-settled proposition that a preexisting nonindustrial impairment which produces an earning capacity disability will convert a subsequent scheduled injury to the unscheduled status. *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978); *Yanez v. Industrial Commission*, 21 Ariz. App. 367, 519 P.2d 220 (1974); *Ronquillo v. Industrial Commission*, 107 Ariz. 542, 490 P.2d 423 (1971).

The hearing judge rejected this argument in finding number 12, as follows:

Thus, if the applicant's prior injury is to be considered to be nonindustrial in nature, the Hearing Officer would be required to conclude that the applicant had sustained her burden of proving a continuing adverse effect upon earning capacity, and the applicable legal principles would convert to (sic) subsequent injury to the unscheduled variety. However, the Hearing Officer cannot accept the premise that the closure of the prior claim without permanent disability, whether as a result of the mistake of applicant's physician or otherwise, converts that prior injury to a nonindustrial one. The character of a prior injury or

1. The necessary foundation to petitioner's argument for unscheduling the second injury to her left leg is based upon the holding of this court in *Van Sickle v. Industrial Commission*, 121 Ariz. 115, 588 P.2d 857 (App.1978) wherein it was held that successive disabilities to the same anatomical site resulted in an unscheduled disability.

condition as industrial or nonindustrial does not depend upon the nature of the closing of the claim. The character of the injury is derived from other circumstances. And the circumstances of the applicant's first injury are, in fact, that she was hurt on the job, she filed a claim, she received benefits under The Workmen's Compensation Act, and her claim was closed. Her prior injury was an industrial injury, but without permanent disability. The legal principles referred to hereinabove do not provide a basis for converting an otherwise scheduled subsequent injury to unscheduled where the prior industrial injury resulted in no permanent disability or impairment. In this situation, the applicable law provides no presumptions rebuttable or otherwise.

We agree with the conclusion of the hearing judge. The 1977 award determining that petitioner was without permanent disability arising from the 1974 industrial injury is conclusive, for purposes of applying the workmen's compensation law, that petitioner has no permanent condition arising from that injury. Although the medical evidence offered in the present case indicates that petitioner's disabling arthritic condition arose out of the 1974 industrial injury and its aftermath, we hold that this evidence may not contradict the 1977 award in order to unschedule the second injury occurring later in 1977. The final award resulting from the first injury is res judicata on the issue. The fact that this determination may have been erroneous does not affect its finality. *Cf. Garcia v. Industrial Commission*, 20 Ariz.App. 145, 510 P.2d 1050 (1973).

■ Petitioner attempts to overcome the res judicata effect of the 1977 award by urging that we treat the disabling arthritic condition as nonindustrial. This argument must fail, however, not because a disabling nonindustrial condition cannot serve as a basis for unscheduling a later injury, for it can,[2] but because the medical evidence clearly indicates that the arthritic condition

in this case is related to the industrial injury of 1974. This is illustrated by the testimony of Dr. Westerkamp:

A. Well, since 19— . . . since her injury of 1974, she had been favoring that foot, favoring the injury. And she had been walking over the outside of her foot. And the stress over that period of 2–2-and-a-half years resulted in osteoarthritis of the tarsal joints of the dorsal lateral aspect of the foot.

Q. And that caused the symptomatic problems?

A. Yes.

and further:

Q. Just a few more, doctor. She walked on the outside of her foot, and then arthritis became symptomatic as a result, correct?

A. Yes.

Q. And it is related to the '74 injury, that is, the arthritis is related to the '74 injury as a result; is that also your opinion?

A. Yes, that's right.

Q. That is to a reasonable medical probability?

A. Un-huh.

For the reasons stated, the award to petitioner for scheduled benefits is affirmed.

EUBANK and OGG, JJ., concur.

---

**2.** *Lewis v. Industrial Commission*, 126 Ariz. 266, 614 P.2d 347 (1980), is an example, holding on a different point, that it is not necessary that

a preexisting disabling condition arise out of "injury or accident" in order to unschedule a scheduled injury.