664 P.2d 655

Donald PAYNE, Petitioner,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Pima County, Respondent Employer,

Home Insurance Company, Respondent
Carrier.

No. 1 CA–IC 2702.

Court of Appeals of Arizona,
Division 1, Department C.

Dec. 7, 1982.

Rehearing Denied Jan. 14, 1983.

Review Granted March 1, 1983.

Tretschok, McNamara & Clymer, P.C. by Dale D. Tretschok, Tucson, for petitioner.

James A. Overholt, Acting Chief Counsel The Industrial Commission of Arizona, Phoenix, for respondent.

Bury & Moeller, P.A. by Marshall Humphrey III, J. Michael Moeller, Tucson, for respondent employer-carrier.

## OPINION

BROOKS, Judge.

This is a special action review of a consolidated Industrial Commission award dismissing a request for hearing, denying a petition to reopen, and awarding scheduled permanent partial disability. Multiple issues are presented:

(1) Whether the September 9, 1977 notice of claim status closing the first injury claim without permanent impairment was voidable because the supporting medical report in the Industrial Commission file is unsigned and the space for indicating the impairment status is blank.

(2) Whether the administrative law judge abused his discretion by dismissing the late request for hearing protesting the September 9, 1977 notice of claim status.

(3) Whether the first claim should have been reopened because medical opinion about the impairment from a meniscectomy changed.

(4) Whether the evidence was mischaracterized by the administrative law judge when he found that the second injury was

stationary with a 10% permanent impairment.

We find no error and affirm the award.

The petitioner twice injured his left knee at work. The employer and industrial carrier were identical, and claims for both injuries were accepted.

The first injury (hereinafter 1976 injury) necessitated a meniscectomy (the excision of a knee joint meniscus). After surgery, Warren D. Eddy, M.D., an orthopedic surgeon, examined the petitioner, found no objective evidence of impairment, and authored an August 16, 1977 physician's report discharging him from medical care with no permanent impairment. The report in the Industrial Commission file, however, is inexplicably unsigned and the space for indicating the impairment status is blank. On September 9, 1977, the carrier issued a notice of claim status (hereinafter September notice) terminating temporary compensation without permanent impairment. This notice was not protested and became final.

The second injury (hereinafter 1978 injury) necessitated surgery to remedy defects in bone surfaces. After surgery, the petitioner had pain, stiffness, and swelling. In October 1980, his treating orthopedic surgeon, Jon B. Wang, M.D., discharged him with a permanent impairment. A subsequent group of consultants, which included Dr. Wang, concluded that the petitioner was stationary on October 3, 1980 with a 20% permanent left knee impairment, 10% from 1976 injury and the meniscectomy and 10% from the 1978 injury. Relying on this report, the carrier issued notices of claim status terminating temporary compensation for the 1978 injury and awarding scheduled disability benefits for a 10% left lower extremity impairment.

The petitioner requested a hearing to protest these notices. In addition, he filed a late request for hearing protesting the September notice and a petition to reopen the 1976 claim. These requests were consolidated and hearings were conducted.

Drs. Eddy, Wang, and Abelardo Sotelo, M.D., the petitioner's present treating physician, gave the dispositive testimony.[1] Dr. Eddy testified that he discharged the petitioner without permanent impairment because he found no measurable loss of motion or strength after the meniscectomy. He admitted, however, that the current trend of medical opinion was to rate an impairment for a meniscectomy notwithstanding the absence of measurable loss of motion or strength. Although Dr. Eddy would not recant his 1977 evaluation because the physical findings justified it, he testified that if he were to evaluate the same condition today, he would follow the modern trend of opinion.

Dr. Wang testified that the petitioner had preexisting osteonecrosis, a degenerative disease, in both knees. The industrial injuries had aggravated this condition in the left knee, and the surgery remedied this aggravation. The 1978 injury also tore the medial meniscus. In Dr. Wang's opinion, these 1978 injuries were stationary with a 10% permanent impairment. He also rated a 10% permanent impairment for the meniscectomy. He accepted Dr. Eddy's objective findings, but followed the modern trend of opinion, which he described as a "philosophical difference" with regard to rating a meniscectomy.

Dr. Wang was also questioned about Dr. Sotelo's subsequent examinations of the petitioner. He refused to modify his opinions.

Dr. Sotelo testified that he first examined the petitioner in September 1981, after the group consultation. An arthroscopy revealed a torn medial meniscus and osteonecrosis. He initially testified that both conditions were related to the industrial injuries and subsequent surgeries. On cross-examination, however, he admitted that he was not reasonably certain that the industrial injuries permanently aggravated the preexisting condition. Then, on redirect examination, he reasserted that it was highly probable that the industrial injuries aggra-

1. James H. Levi, M.D., another orthopedic surgeon who participated in the group consulta-

tion, also appeared, but his testimony is irrelevant to the issues on appeal.

vated this preexisting condition. Finally he foresaw additional surgery, but could not predict when it would be necessary.

After these hearings, the administrative law judge issued a consolidated award dismissing the late hearing request, denying the petition to reopen, terminating temporary compensation on October 3, 1980, and awarding scheduled disability benefits for a 10% impairment of the lower left extremity. The award was affirmed on administrative review. The petitioner then brought this Special Action—Industrial Commission.

On appeal, the petitioner challenges each of the administrative law judge's conclusions. Before addressing his contentions, however, we first consider *Reddel v. Industrial Commission,* 131 Ariz. 263, 640 P.2d 194 (App.1982), a recent relevant case that the parties omitted.

In *Reddel,* a notice of claim status terminating temporary compensation and determining that the industrial injury (to a foot) caused no permanent disability was not protested and thus became final. The claimant subsequently suffered another industrial injury to the same foot. This claim was ultimately closed with a permanent impairment. Because the prior injury claim had been closed without permanent impairment, the impairment from the second injury was classified as scheduled. The claimant's physician, who had treated her for both injuries, testified that his medical report discharging her without permanent impairment for the first injury was a mistake resulting from a secretarial error. The court held that the notice of claim status closing the first claim was final and could not be contradicted. Accordingly, it affirmed an award of scheduled disability benefits for the impairment from the second injury only.

*Reddel* is instructive in the present case because both cases involve unprotested notices of claim status which found no permanent impairment and became final. In the present case, however, petitioner not only contends that the first claim was erroneously closed; he also seeks to reopen it based on a change in medical opinion concerning his impairment. We now address the issues in the order in which they were presented.

The petitioner first contends that the September 1977 notice was *voidable.* He argues that some reason of record must support the closing, see *Parkway Manufacturing v. Industrial Commission,* 128 Ariz. 448, 626 P.2d 612 (App.1981), and that the partially blank report failed this requirement. He concludes that this defect makes the notice voidable, rather than void, because a notice is void only if contradicted by the very report supporting it. See *Calixto v. Industrial Commission,* 126 Ariz. 400, 616 P.2d 75 (App.1980). This voidable notice, the argument suggests, may be contradicted by current medical opinion that the 1976 injury caused a permanent impairment.

■ We reject this contention. The compensation carrier may unilaterally determine the claimant's benefits subject to the right of the claimant to request a timely hearing. *Nelson v. Industrial Commission,* 115 Ariz. 293, 564 P.2d 1260 (App. 1977). The claimant has the burden to protest this notice and prove his claim and unless the claimant timely protests the notice of claim status, it becomes final and is entitled to *res judicata* effect. *Id.; Calixto v. Industrial Commission, supra.* There are limited exceptions to this finality rule, such as self-contradictory notices, *Bernard v. Industrial Commission,* 24 Ariz.App. 136, 536 P.2d 705 (1975); *Best v. Industrial Commission,* 14 Ariz.App. 221, 482 P.2d 470 (1972); and notices contradicted by the supporting medical report, *Roseberry v. Industrial Commission,* 113 Ariz. 66, 546 P.2d 802 (1976). The statutory rights to rearrange and reopen also qualify finality. *See* A.R.S. §§ 23–1044(F) and 23–1061(H).

■ As we held in *Reddel,* the 1977 notice in the present case is *res judicata* as to any claim for compensation arising out of the 1976 injury. The notice is not defective and thus its finality may not be overcome. The notice is unambiguous and gave the petitioner adequate warning of its effect. The medical evidence when the case was

closed fully supported it. The partially blank report in the Industrial Commission file is a nonjurisdictional defect, *see Calixto v. Industrial Commission,* 126 Ariz. at 402, 616 P.2d at 75; the only relevant inquiry is whether the medical evidence when the claim was closed contradicted the September 1977 notice. We find that because no contradiction was shown, none of the exceptions apply. The unprotested notice, therefore, is final.

The petitioner next contends that the administrative law judge abused his discretion by dismissing the late request for hearing protesting the September 1977 notice. He does not question general principles, but rather their application to this case. We find no abuse of discretion.

■ The petitioner had sixty days to protest the September 1977 notice, *see* A.R.S. § 23–947 (amended 1980), but failed to request a hearing for over three years. To waive an untimely hearing request, the claimant must prove: (1) that there is some meritorious position underlying the reasons for the late filing, (2) that the delay was inexcessive, and (3) that the delay did not prejudice the carrier. *E.g. Keeler v. Industrial Commission,* 125 Ariz. 333, 609 P.2d 603 (1980). The administrative law judge's determination will not be disturbed on appeal unless he abused his discretion. *Kleinsmith v. Industrial Commission,* 26 Ariz.App. 77, 546 P.2d 346 (1976).

■ In the present case, the administrative law judge found that none of the reasons offered by petitioner for his failure to file a timely request for hearing was meritorious. The evidence supports this finding. The petitioner accepted the September notice because he was experiencing only minor problems with his knee and had returned to work. In addition, his physicians had told him that his knee "was better." Now that the medical opinion has changed, the petitioner argues that he should be permitted to challenge the original closing. He cites no authority for this position, and we have discovered none. We conclude

that the administrative law judge did not abuse his discretion in finding that the new medical opinion did not excuse the untimely hearing request.

In this context, the petitioner relies on *Cohen v. Industrial Commission,* 133 Ariz. 24, 648 P.2d 139 (1982). The claimant in *Cohen* had requested a claim form from the compensation carrier, but was sent the wrong one. She timely filed this form, but discovered the error and filed the proper form after the time limit ran. The administrative law judge refused to excuse the untimely filing because the carrier had not actively misled the claimant. This Court set aside the award because fault is not required to show a meritorious position, but rather reasonable reliance on incorrect information suffices.

The petitioner's reliance on *Cohen* is misplaced. The incorrect information there concerned the procedure for filing a claim, not the claimant's right to benefits. In contrast, no incorrect information was given in the present case. The petitioner challenges the substantive correctness of the September 1977 notice. *Cohen* therefore is inapplicable.

■ The petitioner also argues that the administrative law judge "inferentially" found the delay was not excessive and there was no prejudice. We disagree. The test for excusing an untimely hearing request is conjunctive, not disjunctive. Denial of any of the conjuncts is sufficient to dismiss the hearing request. *Keeler v. Industrial Commission,* 125 Ariz. 333, 609 P.2d 603 (App. 1980). The finding of no meritorious excuse, therefore, implies nothing about the other conjuncts.

■ The petitioner next contends that the 1976 injury claim should have been reopened. He concedes that his physical condition from the 1976 industrial injury was unchanged and that Dr. Eddy's physical findings indicated no impairment. He argues, however, that the changed medical opinion about the impairment from a men-

iscectomy, which even Dr. Eddy now accepts, warrants a reopening.[2]

A.R.S. § 23–1061(H) permits a reopening for a new, additional, or previously undiscovered temporary or permanent condition related to the industrial injury. *E.g. Pascucci v. Industrial Commission,* 126 Ariz. 442, 616 P.2d 902 (App.1980). The claimant's physical condition must have changed to reopen for a new or additional condition, but need not to reopen for a previously undiscovered condition. *Crocker v. Industrial Commission,* 124 Ariz. 566, 606 P.2d 417 (1980). Mere additional evidence about a condition considered when the case was closed does not permit reopening. *Black v. Industrial Commission,* 89 Ariz. 273, 361 P.2d 402 (1961); *Aetna Insurance Co. v. Industrial Commission,* 115 Ariz. 110, 563 P.2d 909 (App.1977). On the other hand, the discovery of the true cause of a condition may be sufficient to reopen for a previously undiscovered condition. *Salt River Project v. Industrial Commission,* 128 Ariz. 541, 627 P.2d 692 (1981); *Crocker v. Industrial Commission, supra; Bell v. Industrial Commission,* 126 Ariz. 536, 617 P.2d 44 (App.1980); *Pascucci v. Industrial Commission, supra.*

The present case is distinguishable from the cited reopening cases.[3] The new medical opinion did not discover the true cause of the petitioner's condition. It was accurately diagnosed when the claim was closed. Furthermore, no new objective discovery was made. To the contrary, all of the medical experts deferred to Dr. Eddy's physical findings.

We disagree with petitioner's argument that an evolution in medical opinion permits a reopening. Dr. Eddy's rating was justified when made, and the new medical opinion may not contradict the 1977 award. The final award resulting from the first injury is *res judicata* on the issue. The fact that this determination may have been erroneous does not affect its finality. *See Reddel v. Industrial Commission, supra.*

The petitioner makes two additional arguments which require only summary disposition. The first is that because the Industrial Commission retains jurisdiction over closed claims, it has authority to reopen a case to correct injustice. But although the Industrial Commission retains jurisdiction, its authority is specifically limited to reopening for a new, additional, or previously undiscovered condition. *E.g. Inspiration Consolidated Copper Co. v. Smith,* 78 Ariz. 355, 280 P.2d 273 (1955). The second argument is that Dr. Eddy's original rating constituted a "constructive fraud." The authority cited applies to erroneous medical advice from carrier physicians inducing the claimant to settle his claim. *See* 3 A. Larson, *The Law of Workmen's Compensation,* § 81.51 at 15–535 (1976). This authority is inapplicable to the present case as there was no evidence that Dr. Eddy's original rating was either fraudulent or erroneous under the state of recognized medical opinion which existed at that time.

The petitioner lastly argues that the administrative law judge mischaracter-

---

2. The petitioner argues that the administrative law judge ignored Dr. Eddy's hearing testimony that if he were to evaluate the petitioner's condition today, he would rate an impairment for the meniscectomy. We agree that the administrative law judge focused on Dr. Eddy's testimony that his *physical* findings justified his original rating. No prejudice resulted, however, for the award is correct despite this mischaracterization. We therefore will not set it aside for this reason. *See Inspiration Consolidated Copper v. Industrial Commission,* 118 Ariz. 10, 574 P.2d 478 (App.1975).

3. In *Salt River Project,* diagnostic tests indicated that the claimant did not have a herniated disc and he was advised that he had a

psychological rather than a physical condition. Thereafter, surgery conclusively confirmed the existence of a herniated disc. Similarly, in *Pascucci,* one group of physicians interpreted a myelogram to indicate a herniated disc and another group disagreed. Thereafter, surgery conclusively confirmed the existence of a herniated disc. In *Crocker,* the cause of the claimant's symptoms was unknown. Thereafter, for the first time a physician diagnosed an organic basis for the symptoms. In *Bell,* the cause of the claimant's symptoms was tentatively diagnosed and the relationship to his industrial head injury hypothesized. Thereafter, the diagnosis and opinion as to causation became definite to a reasonable medical probability.

ized Dr. Sotelo's testimony to find that the 1978 injury was medically stationary with a 10% permanent impairment. The administrative law judge found that Dr. Sotelo's testimony was equivocal and speculative. The award, however, was not dependent upon this characterization; the administrative law judge also resolved the conflict between Dr. Sotelo and Dr. Wang in favor of Dr. Wang's testimony. Although Dr. Sotelo examined the petitioner after Dr. Wang, their opinions conflicted. *See Radlein v. Industrial Commission,* 27 Ariz.App. 215, 553 P.2d 248 (1976); *Janis v. Industrial Commission,* 27 Ariz. 263, 553 P.2d 1248 (1976); *Garcia v. Industrial Commission,* 26 Ariz.App. 313, 548 P.2d 26 (1976). Dr. Wang's testimony that the petitioner was medically stationary with a 10% impairment from the 1978 injury fully supported the award.

For the above reasons, we affirm the award.

Award affirmed.

JACOBSON, P.J., and CONTRERAS, J., concur.