626 P.2d 612

**PARKWAY MANUFACTURING,**
**Petitioner-Employer,**

**and**

**State Compensation Fund,**
**Petitioner-Carrier,**

**v.**

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

John C. Karons, Respondent-Employee.

**No. 1 CA–IC 2324.**

Court of Appeals of Arizona,
Division 1,
Department C.

Feb. 12, 1981.

Rehearing Denied March 19, 1981.

Review Denied April 7, 1981.

Robert K. Park, Chief Counsel, State Compensation Fund by John R. Greer, Phoenix, for petitioner-employer and petitioner-carrier.

Calvin Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Jerome & Gibson, P. C. by Don A. Fendon, Phoenix, for respondent-employee.

## OPINION

O'CONNOR, Judge.

This special action is taken from an Industrial Commission award which set aside a carrier's notice of claim status discharging the respondent employee with no permanent disability after a reopening of his claim, and which awarded temporary benefits and medical expenses to the employee until his condition becomes stationary. The award of the administrative law judge was affirmed on administrative review. We find that the award was not supported by reasonable evidence, and it is set aside.

The facts are somewhat confusing. The employee, John C. Karons, suffered an industrial injury to his right knee and to the third finger of his right hand in May, 1977. Benefits were paid and the claim was closed in March, 1978, with a determination that the employee had a scheduled 20% functional loss of the finger and a corresponding 2%

functional loss of the hand. A scheduled benefit of $500.00 was paid.

The employee subsequently experienced pain in the same finger. He consulted Dr. Roger Maxwell, M.D., who performed surgery on the finger in May, 1978. A mass of inflamed tissue in the finger was excised, and it was discovered during surgery that the injured joint was secondarily infected with valley fever. The employee returned to work but continued to have pain in the finger. The employee had contacted the carrier's office by telephone prior to the surgery, and he mistakenly believed his original claim was still open for benefits. After the surgery, he learned he was mistaken and he filed a petition to reopen his claim on July 7, 1978. The petition was supported by a medical report from Dr. Maxwell. The employee was not represented by counsel. The petition to reopen was denied by the carrier on the basis of insufficient medical evidence. The employee filed a request for hearing to protest the denial. Prior to the hearing, the petition to reopen was accepted by the carrier by a notice of claim status, which vacated the previous denial. On October 20, 1978, the carrier issued another notice of claim status stating again that the petition to reopen was accepted for benefits from and after July 7, 1978, but denying liability for the unrelated valley fever. Because the surgery was performed before the petition to reopen was filed, the cost of the surgery was not paid by the carrier. No protest or request for hearing was filed by the employee and the determination became final.

In February, 1979, the carrier sent the employee a printed form letter asking him to check the appropriate box and return the letter. The employee complied with the request by checking a box and adding the two underlined words to the form as follows:

(x) I am not now seeing the doctor and do not plan on returning for treatment as I <u>think I</u> have recovered from my injury.

( ) I am currently receiving medical treatment for my injury. My next appointment is _____ with Dr. _____.
Date

Based on the employee's response to the form letter, the carrier issued a notice of claim status on February 15, 1979, terminating temporary benefits and stating the "injury resulted in no permanent disability."

The employee retained counsel and a request for hearing was filed to protest the February 15 notice of claim status. The request for hearing stated, "we desire an opportunity to prove applicant's industrial injury of May 25, 1977, has resulted in permanent disability." In answer to the carrier's interrogatories concerning what issues would be raised at the hearing, the employee's counsel stated:

Since applicant has a scheduled injury on his right knee and pursuant to Dr. Yadon's report of 1/9/78 that applicant has a 2% impairment of the hand, it would appear that this man is entitled to an unscheduled disability rating.

The hearing was held. The employee testified that since the surgery he had continued to experience pain each evening in the finger, although less severe than before the surgery. He stated the surgery had only slightly improved the range of motion of the finger. Dr. Maxwell testified that in 1978 he had diagnosed a condition of traumatic synovitis in the joint of the finger, which he had eventually excised and discovered was secondarily infected with coccidioidomycosis or valley fever. He stated he did not know the prognosis for the finger.

The administrative law judge issued his award which was entitled "Decision upon Hearing and Findings and Award for Scheduled Permanent Partial Disability." Notwithstanding the descriptive title, the award found that the original claim in 1977 had been closed with a finding of a permanent disability amounting to a 20% functional loss of the finger. It also found that in 1978 Dr. Maxwell had diagnosed a "traumatic synovitis" in the finger requiring surgery, and that he had discovered a secondary infection from coccidioidomycosis (valley fever) which "would not have occurred other than as a result of the industrial

injury." The award determined that the employee was entitled to temporary benefits on the reopening until the finger became stationary, and that the February 15, 1979, notice of claim status was invalid because it was not supported by medical evidence.

The petitioner carrier raises two issues: first, whether the administrative law judge exceeded his authority in determining that the February 15, 1979, notice of claim status closing the reopened claim was invalid for lack of an accompanying medical report, and in finding that the question of whether the condition was stationary was still unresolved; and, second, whether the award granted benefits for the valley fever despite the previous denial of such benefits in an unprotested notice of claim status which became final.

Petitioner contends that a claim may be closed by a carrier without the necessity of a medical report indicating a medical basis for the closure. The only administrative rule concerning the question is A.C.R.R. R4–13–118, which provides in part:

(b) *If* notices of claim status or other determinations issued by an employer or carrier are predicated upon the report of a physician, a copy of such physician's report *shall* accompany the notice of claim status or other determinations sent to the Commission.

(c) All claims where compensation has been paid shall be closed by issuance of a notice of claim status. *If* the claim is closed based upon the report of the physician, a copy of the physician's report *shall* be sent to the Commission together with the notice of claim status. [emphasis added]

As noted by petitioner, neither the employee nor his counsel raised any question concerning the lack of an accompanying medical report in their request for hearing on the February 15 notice of claim status, or in answers to interrogatories. Moreover, the language of the rule implies that claims may be closed on bases other than a medical report.

We agree with petitioners that it is not necessary that every notice of claim status which closes a claim and terminates benefits be based on a medical report justifying the closure. Moreover, failure to comply with A.C.R.R. R4–13–118 does not constitute a jurisdictional defect, nor does it render the notice of claim status void. *Calixto v. Industrial Commission*, 126 Ariz. 400, 616 P.2d 75 (App.1980); *Davis v. Industrial Commission*, 26 Ariz.App. 355, 548 P.2d 849 (1976). *Cf. Roseberry v. Industrial Commission*, 113 Ariz. 66, 546 P.2d 802 (1976) (where a notice of claim status concluding that the claimant's condition was stationary was contradicted by the accompanying medical report, the notice of claim status was held to be void on its face). Although expert medical testimony may be necessary in order to establish compensability of a claim,[1] we are aware of no case holding that it is always necessary in order to close a claim, and respondents have cited none to us. There must, of course, be some valid basis in the record, medical or otherwise, reasonably supporting the closure or termination. Evidence that a claimant believes that he has fully recovered and does not plan to seek continued medical treatment for an injury can furnish the basis for a carrier's unilateral determination that the claim should be closed, subject to the right of the claimant to request a hearing to protest the determination. As stated in *Nelson v. Industrial Commission*, 115 Ariz. 293, 295, 564 P.2d 1260, 1262 (App.1977):

In effect, petitioner's position is that the carrier is deprived of any right to make a unilateral determination of benefits where there could be the slightest doubt of the correctness of its determination. Our statutory system, however, is designed to allow carriers to make decisions subject to the right of the claimant to request a timely hearing. Such carrier determinations when not protested are entitled to finality.

[1] For cases holding that expert medical testimony was necessary to establish compensability of a claim, *see, e. g., Spears v. Industrial Commission*, 20 Ariz.App. 406, 513 P.2d 695 (1973); *Stevens v. Industrial Commission*, 14 Ariz.App. 139, 481 P.2d 509 (1971).

When a timely request for hearing is filed, the entire matter protested is *open for consideration* and the applicant need not specify the grounds of his request for hearing, notwithstanding A.C.R.R. R4–13–135. *German v. Industrial Commission*, 12 Ariz. App. 301, 469 P.2d 867 (1970); *Salmi v. Industrial Commission*, 3 Ariz.App. 411, 415 P.2d 126 (1966). As stated by this court in *German*, 12 Ariz.App. at 307, 469 P.2d at 873:

> Our views are supported by our opinions that a timely petition for hearing after an award not preceded by formal hearing opens up the whole case as a matter of right and that the petitioner need not specify the grounds of his petition.

In the event no timely request for hearing is filed following the issuance of a notice of claim status, the administrative law judge could not later set aside the notice of claim status *sua sponte*, and the parties adversely affected by the notice of claim status would be held to have waived their right to object. *Holmes Tuttle Broadway Ford v. Industrial Commission*, 27 Ariz. App. 128, 551 P.2d 577 (1976).

In this case, based on information from the employee that he was no longer receiving medical treatment and that he thought he had recovered from his injury, the carrier issued the February 15 notice of claim status terminating benefits and closing the claim. The notice of claim status was ambiguous inasmuch as it referred to the original date of injury, May 25, 1977, and the box on the form was checked which stated "injury resulted in no permanent disability." The petitioner carrier has argued, and the respondent employee has agreed in his brief, that the February 15 notice of claim status logically referred to the new or additional condition which occasioned the reopening of the original claim, and that it constituted a determination by the carrier that the new or additional condition on reopening was terminated with no *additional* permanent disability. We agree. The original award determining that the employee had a 2% permanent partial functional disability of the right hand was final

and res judicata. Only the reopened claim was still outstanding at the time the February 15 notice of claim status was issued. It was only the reopened claim which was affected by the February 15 notice of closing. The timely request for hearing placed in issue all matters relevant to the reopened claim for a new or additional condition. The burden of proof at the hearing was on the employee who had requested the hearing. *Stephens v. Industrial Commission*, 114 Ariz. 92, 559 P.2d 212 (App.1977). It is apparent that the employee's attorney believed that he could relitigate the original 1978 determination that the injury was a scheduled injury to the finger. In fact, only the claim on reopening for a new or additional condition of the finger was at issue.

The court will consider the evidence in a light most favorable to sustaining the award and the Commission's findings must be upheld if reasonably supported by the evidence. *Micucci v. Industrial Commission*, 108 Ariz. 194, 494 P.2d 1324 (1972). The evidence at the hearing indicated that the finger had improved since the surgery and the reopening. The pain was less, and the range of motion was better than after the original claim was closed in 1978. There was no evidence whatever that additional medical treatment was needed, or that the claim should not be closed. On the basis of the record, the employee failed to sustain his burden of proof at the hearing and there was no reasonable evidence to support the award. *Stephens v. Industrial Commission, supra.* The award is set aside. It is not necessary to address the second issue raised by the petitioner, namely, whether the award granted benefits for the employee's valley fever in the finger.

OGG and WREN, JJ., concur.