879 P.2d 375

Irene TELLER, Petitioner,

v.

INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

General Dynamics, Respondent Employer,

Pacific Employers, Respondent Carrier.

No. 1 CA–IC 93–0061.

Court of Appeals of Arizona, Division 1, Department C.

Aug. 18, 1994.

Loretta M. Fresquez, Flagstaff, for petitioner.

Anita Valainis, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Long, Lester & Lundmark, P.A. by James B. Long, Phoenix, for respondents Employer and Carrier.

## OPINION

VOSS, Judge.

This is a special action review of an Arizona Industrial Commission ("Commission") Decision Upon Hearing and Findings and Award Granting Reopening ("Award") and the Amended Decision Upon Review affirming the Award. We decide whether a termination notice is void on its face because the twenty-day letter on which it was based asserted without supporting medical evidence that ongoing symptoms were no longer related to an accepted industrial injury. We conclude that the termination notice was void on its face and set aside the Award for this reason alone.

### I. PROCEDURAL AND FACTUAL HISTORY

Claimant Irene Teller worked approximately twenty years for General Dynamics at its electronics assembly plant on the Navajo Reservation. Her work exposed her to fumes and smoke from solder flux.

In May 1988, Claimant saw Robert W. Weeks, M.D., of the Indian Health Service, and he diagnosed mild asthma. She returned to the doctor that same month and again on June 1, 1988, and reported that exposure to fumes and smoke at work were making her sick. On June 6, 1988, she saw George Duval, M.D., the department head, who diagnosed "asthma secondary to fumes, poor ventilation in workplace."

In July 1988, Claimant and Dr. Duval completed a Worker's and Physician's Report. This claim gave an injury date of June 1, 1988. Respondent Carrier Pacific Employers ("Pacific") subsequently accepted the claim; however, Pacific placed Claimant on temporary partial disability status based on information from General Dynamics that Claimant had returned to work on June 13, 1988.

On June 28, 1988, Dr. Weeks, apparently responding to inquiries from General Dynamics, reported that he had last seen Claimant on June 20, 1988, at which time Claimant stated that her condition had worsened after returning to work. He also reported that he could not determine whether the exposures

at work had caused Claimant's asthma, but he had no doubt that these exposures had exacerbated her condition. Because continued exposure would perpetuate and possibly worsen the respiratory distress, he recommended isolation from solder flux.

On April 7, 1989, Claimant stopped working. Nothing in the record indicates Pacific knew that Claimant had stopped working until the current litigation.

On April 27, 1989, Pacific's claims representative sent Claimant the following twenty-day letter:

> Information in our file indicates you last saw your attending physician for industrially-related problems on 11–15–88. *Although we understand you have had subsequent asthma attacks, they are not related to your employment.* Furthermore, your employer advises they have taken care of the air, and it is now all clear.
>
> Unless we receive a medical report to the contrary within the next 20 days, we will assume your condition, as relates to the industrial injury, is now stationary. At that time, we will issue the proper notice to terminate your benefits. If you have any questions, please contact the undersigned....

(Emphasis added.) Claimant did not respond to this letter.

On May 30, 1989, Pacific issued a Notice of Claim Status terminating temporary compensation ("termination notice"). This form notice states that Claimant had been discharged from active care on May 1, 1989, and that she did not have a permanent disability. It does not refer to the twenty-day letter. Claimant did not protest this closure. Consequently, unless a statutory excuse or other exception applies, the termination notice is "final and res judicata to all parties." Ariz. Rev.Stat.Ann. ("A.R.S.") § 23–947(B) (Supp. 1993).

Meanwhile, the Navajo Nation filed complaints with the National Institute for Occupational Safety and Health (NIOSH) and the Occupational Safety and Health Administration (OSHA) because many workers at the General Dynamic's plant had developed or

exacerbated asthma. By September 1989, General Dynamics had identified, and no longer used, the offensive solder. The Indian Health Services subsequently reported no additional cases because the solder was changed, the season allowed better ventilation, and "the affected individuals were no longer working at the plant." No further problems were reported during the winter months when ventilation decreased, and NIOSH then closed its investigation.

Notwithstanding the closure of her industrial claim, Claimant continued to require and receive treatment for asthma from the Indian Health Service. In May 1990, her treating physician, Don Lewis–Kraitsik, M.D., reported that since June 1988, Claimant continuously required oral and spray medications for asthma, and she required tapered steroids in June 1988, September 1988, and twice in March 1990. He concluded that Claimant's asthma is "certainly no better and might be considered worse by virtue of the fact that she required two courses of tapered steroids in March, 1990 to clear the attack."

In February 1992, at Claimant's request, Dr. Lewis–Kraitsik wrote a letter regarding her medical condition and the possibility of reopening her disability claim.

Lewis–Kraitsik wrote:

In 1991, ... [Claimant] has been maintained on Asthma medications by spray and by mouth. On 6/28/91 she required further treatment with a small volume (SVN) nebulizer treatment as an outpatient and she was begun on a cycle of Prednisone by mouth. She had a repeat episode 9/5/91 and 9/7/91 at which time she was seen in the ER and had the SVN treatment and was again placed on Prednisone.

Pulmonary function tests were performed 10/16/91 which showed that all measures of breathing function had slightly decreased since 4/7/90.

She was again seen in the ER with another Asthma flare requiring SVN's plus Intravenous and oral steroids; the same process was repeated 1/31/92. Peak flow (a measure of air flow affected by Asthma) was measured 1/31/92 and again on 2/11/92 af-

ter her Asthma had improved. Her peak flow measures were 280 and 240 respectively. These are approximately ½ the expected values.

Thus, this woman is a steroid-dependent Asthmatic with persistent diminution in pulmonary function, which would imply a significant disability which is worsening.

In March 1992, Claimant filed a petition to reopen the June 1988 claim. Pacific issued a Notice of Claim Status denying the petition. Claimant filed a timely Request for Hearing.

Pending the hearing, Pacific filed the June 1988 letter by Dr. Weeks and the March 1990 NIOSH report. Claimant did not submit any of Claimant's treatment records or any correspondence from Pacific concerning these records.

Also pending the hearing, Pacific had a pulmonary specialist, Gerald F. Schwartzberg, M.D., examine Claimant. In his report, Dr. Schwartzberg records a history that Claimant had to stop working because of her asthma in April 1989. He diagnosed "occupational asthma due to inhalation of solder flux. This is an ongoing condition which requires constant medication." Dr. Schwartzberg expressly disagreed that Claimant's occupational exposure only temporarily aggravated a preexisting condition.

At the initial hearing, Claimant and Dr. Lewis–Kraitsik testified. Their testimony addressed whether Claimant's condition had changed to justify reopening. During this hearing Claimant's counsel inquired whether she should address entitlement to temporary compensation if the claim was reopened; however, the Administrative Law Judge ("ALJ") ruled that she should not address it at this hearing.

At a continued hearing, Dr. Schwartzberg appeared and similarly addressed reopening. At the close of this hearing, the ALJ requested post-hearing memoranda to address "what impact the twenty-day letter has on the issue of preclusion and res judicata."

The parties then submitted their memoranda. Pacific argued that Claimant was precluded from establishing the need for further medical treatment because of the finali-

ty of the NCS of May 30, 1989, terminating the temporary compensation and medical benefits without permanent disability. It then asserted that this final determination precluded reopening for a substantially similar condition of asthma, which was disabling when the claim was closed and now requires substantially similar treatment or at most additional supportive care.

Claimant did not address reopening. Instead, she asserted for the first time that the termination notice is void under *Roseberry v. Industrial Commission*, 113 Ariz. 66, 546 P.2d 802 (1976), because it is contradicted by the medical evidence in Pacific's file. As further support for her contention, Claimant cited *NCR Corporation v. Industrial Commission*, 142 Ariz. 167, 169–70, 688 P.2d 1059, 1061–62 (App.1984) (applying *Roseberry* to notice based on twenty-day letter.)

The ALJ then issued the Award. The findings at best implicitly address Claimant's assertion that the termination notice is void. Although the ALJ found that "[a]pparently there was no medical supporting documentation for the closure," he also found that notices based on twenty-day letters "have been considered valid by the Court of Appeals." However, *NCR* was cited among the cases as support for this finding. Furthermore, the ALJ found that res judicata and issue preclusion applied to this case, which implies that the termination notice became final. He nevertheless concluded that the final termination notice did not preclude reopening.

Claimant requested review. Her sole argument was that the termination notice is void. She did not request additional findings on this issue.

Pacific responded to Claimant's request and also requested review of the part of the award reopening the claim. The response addressed the merits of the validity issue by denying that the termination notice is void. Pacific did not object to the timing of Claimant's assertion, or request an additional hearing to present evidence that might bear on this issue, or make an offer of proof concerning this evidence.

The ALJ ultimately affirmed the Award without modification. Claimant then brought this special action. Pacific timely filed its notice of appearance and requested affirmative relief. *See generally* R.P. Special Actions 10(f).

## II. DISCUSSION

On review, Claimant again asserts that the termination notice is void. She reiterates the argument presented below that *Roseberry* and *NCR* apply because the medical reports in Pacific's file contradict the termination notice. Additionally, for the first time she argues that the termination notice is void because the claims representative improperly drew a medical conclusion without medical support. Finally, Claimant for the first time challenges the sufficiency of the ALJ's findings.

Pacific answers with several arguments. It argues that Claimant waived the validity issue by raising it after the hearings were closed. It also argues that Claimant waived her challenge to the sufficiency of the findings by not requesting additional findings in her Request For Review. Finally, it argues that the termination notice is valid and final. This latter argument, however, does not directly address Claimant's contention that the claims representative improperly drew a medical conclusion without legally necessary medical support.

### 1. Sufficiency of Findings

To challenge the sufficiency of findings on appellate review, a petitioner must have requested additional findings on administrative review. *See, e.g., Spielman v. Industrial Comm'n*, 163 Ariz. 493, 496, 788 P.2d 1244, 1247 (App.1989). Here, Claimant's Request for Review merely reiterated the argument she presented in her post-hearing memorandum. She did not request additional findings; therefore, she cannot challenge the sufficiency of the findings on appellate review.

### 2. Waiver of Validity Issue

An issue generally cannot be raised for the first time on review. *E.g., Stephens v. Industrial Comm'n*, 114 Ariz. 92, 94, 559 P.2d 212, 214 (App.1977). The rationale for

this general rule is that a petitioner must exhaust administrative remedies because the court assumes that an ALJ would have decided an issue correctly if the petitioner had presented it to the ALJ. *Id.* at 95, 559 P.2d at 215.

■ Some issues must be raised before the evidentiary phase of the case. *Magma Copper Co. v. Industrial Comm'n,* 139 Ariz. 38, 45–49, 676 P.2d 1096, 1103–07 (1983). This is to ensure that the opponent has a fair opportunity to present evidence. *Id.* at 45–46, 676 P.2d at 1103–04.

Although Claimant admittedly raised the validity issue for the first time in her post-hearing memorandum, we conclude that *Roseberry* creates an exception to the general rule of timeliness. In *Roseberry,* the claimant underwent back surgery for his industrial injury. His treating doctor subsequently released him to heavy work but reported that the industrial injury was not yet stationary. The carrier relied on this report to issue a notice of claim status terminating temporary compensation without permanent impairment. The claimant failed to request a hearing within the protest period. He subsequently filed a petition to reopen his claim. The hearing addressed only whether the claimant had a change in condition then required to reopen his claim. The claimant appealed the denial of reopening, but he did not raise the issue of the validity of the closure. *Roseberry,* 113 Ariz. at 67–68, 546 P.2d at 803–04.

On review to the supreme court, the court independently raised the validity issue and concluded that the termination notice was "void on its face" because it relied on a medical report that directly contradicted it. Consequently, the Commission had never lost jurisdiction over the "otherwise valid claim." *Id.* at 68, 546 P.2d at 804.

■ Likewise here, if the termination notice is "void on its face," *Roseberry* would permit the court to address the validity issue even though Claimant raised it for the first time in her post-hearing memorandum.

### 3. Validity of Termination Notice

This court has addressed the validity of a termination notice without supporting medical evidence in three other published cases. The first case is *Parkway Manufacturing v. Industrial Commission,* 128 Ariz. 448, 626 P.2d 612 (App.1981). In *Parkway,* the claimant underwent finger surgery in May 1978. In February 1979, the carrier sent the claimant a form letter regarding ongoing treatment. One of the printed responses stated: "I am not now seeing the doctor and do not plan on returning as I think I have recovered from my injury." *Id.* at 450, 626 P.2d at 614. The claimant checked this response, underlined the words "think I" and returned the letter. The carrier relied on this letter to issue a termination notice declaring the industrial injury stationary without permanent impairment. The claimant protested this notice. Although he did not raise the validity issue, the ALJ found that the carrier had invalidly terminated the claim without supporting medical evidence and awarded continuing benefits. *Id.* at 450–51, 626 P.2d at 614–15. This court concluded that the termination notice was valid:

> There must, of course, be some valid basis in the record, medical or otherwise, reasonably supporting the closure or termination. Evidence that a claimant believes that he has fully recovered and does not plan to seek continued medical treatment for an injury can furnish the basis for a carrier's unilateral determination that the claim should be closed, subject to the right of the claimant to request a hearing to protest the determination.

*Id.* at 451, 626 P.2d at 615. We also criticized the ALJ for *sua sponte* raising the validity issue, and we set aside the award for lack of support in the record. *Id.* at 452, 626 P.2d at 616.

The second case is *Minghelli v. Industrial Commission,* 129 Ariz. 222, 630 P.2d 45 (App. 1981). In *Minghelli,* the carrier suspended benefits because the claimant left Arizona without obtaining prior approval as required by A.R.S. section 23–1071(A). Claimant did not protest the suspension or otherwise contact the carrier or the Commission. About six months later, the carrier issued a termi-

nation notice declaring the industrial injury stationary without permanent impairment. Claimant subsequently filed an untimely protest and asserted that the termination notice was invalid because it was contrary to medical evidence in the carrier's file. *Id.* at 224, 630 P.2d at 47. This court distinguished *Roseberry* and applied *Parkway*:

[A]lthough the medical evidence indicated that the petitioner was nonstationary at the time benefits were suspended, some six months had elapsed between the suspension and the termination notice. During this period, the petitioner failed to contact the carrier about his claim or to seek active medical attention. This inactivity supports a reasonable inference that between the time of the suspension and the time of the termination, the petitioner's condition had become stationary without permanent impairment. If the petitioner was in fact nonstationary or permanently impaired, it was incumbent upon him to timely protest the termination notice and prove his claim.

*Id.* at 225, 630 P.2d at 48.

The last case is *NCR Corporation v. Industrial Commission*, 142 Ariz. 167, 688 P.2d 1059 (App.1984). In *NCR*, while the claimant continued under active care from a treating physician, the carrier scheduled an independent medical examination. The examiner reported that the industrial injury was stationary with a permanent impairment. The carrier did not rely on this report to issue a termination notice, and the claimant continued to see her treating physician for about two more months. She then stopped seeing him without explanation. About four months later, the carrier sent the claimant a twenty-day letter requesting information about treatment since the last time the claimant had seen the treating physician. Claimant did not respond, and the carrier issued a termination notice declaring the industrial injury stationary without permanent impairment. The notice did not refer to the twenty-day letter. Claimant subsequently filed a petition to reopen and, shortly before the scheduled hearing, an untimely protest. When the ALJ learned of the protest, he cut short the hearing and issued an award vacat-

ing the termination notice. *Id.* at 168, 688 P.2d at 1060. This court affirmed by distinguishing *Parkway* and *Minghelli* and applying *Roseberry*:

In the present case, the "twenty-day" letter ... was sent to claimant approximately six months after ... [the IME]. Standing alone, the twenty-day letter might have justified termination of the claim because of claimant's failure to respond. In the absence of the ... [IME] report, the carrier would have been justified in terminating claimant with no permanent disability. The presence of the report in the hands of the carrier, however, places this case in the *Roseberry* category because it referred to claimant's permanent impairment. The twenty-day letter, sent thereafter, does not save the notice from being void because it is equivocal as to the basic issue of permanent impairment and it cannot serve to override the effect of the ... [IME] report. The hearing judge correctly determined that the notice of claim status was void.

*Id.* at 170, 688 P.2d at 1062.

■ To establish that the termination notice in the current case is "void on its face," the twenty-day letter itself must have been fundamentally defective. We conclude that Claimant's argument that the twenty-day letter invalidly demanded refutation of Pacific's medically unsupported causation opinion addresses such a fundamental defect.

Pacific describes the twenty-day letter as a request for further information on Claimant's "current status" comparable to the requests for information approved in prior cases. To the contrary, although the twenty-day letter stated that Pacific had not received reports of treatment after November 15, 1988, Pacific did not merely solicit additional information about any subsequent treatment. Instead, the letter acknowledged that Claimant had continued to suffer asthma attacks, but it asserted that these attacks were unrelated to the industrial exposure even though it lacked supporting medical evidence for this assertion. Pacific then required Claimant to produce medical evidence to establish a causal relationship or it would terminate the claim.

A twenty-day letter serves a necessary but limited purpose. A claimant sometimes unilaterally discontinues treatment or otherwise abandons a claim, and carriers should not be required to keep such claims open. A twenty-day letter provides a valid means of closing a claim; however, it is not a valid means for terminating a claim when a carrier knows that a claimant continues to have symptoms similar to those for which a carrier accepted compensability.

The only justification for terminating such a claim is a reasonably probable basis for believing that the industrial injury no longer causes the similar symptoms. Unless apparent to a layman, a medical expert must determine whether or not an industrial injury has caused or has contributed to a claimant's condition. *See, e.g., Western Bonded Products v. Industrial Comm'n*, 132 Ariz. 526, 527–28, 647 P.2d 657, 658–59 (App. 1982). Similarly, this rule applies to the termination of a claim on the grounds that an industrial injury only temporarily exacerbated an underlying condition. *See, e.g., Arellano v. Industrial Comm'n*, 25 Ariz.App. 598, 600–04, 545 P.2d 446, 448–52 (1976). Pursuant to A.R.S. section 23–1026, carriers may request an independent medical examination to obtain the medical opinion required to terminate a claim for lack of causation.

A carrier cannot use a twenty-day letter to substitute for an independent medical examination and to shift the burden of proving causation to a claimant. To terminate a claim when a carrier knows that a claimant continues to have symptoms similar to those for which it accepted compensability, a carrier must issue a termination notice with supporting medical evidence that the ongoing symptoms no longer are related to the industrial injury.

Pacific did not schedule an independent medical evaluation before sending the twenty-day letter and did not have medical evidence that Claimant's asthma attacks after November 15, 1988, were unrelated to her industrial exposure when it terminated the claim.[1] Accordingly, we conclude that the termination notice is void on its face, and we set aside the Award.[2]

CLABORNE, P.J., and LANKFORD, J., concur.

---

1. The evidence of record, Dr. Weeks's report of June 1988 and the NIOSH report of March 1990, is insufficient. Although Dr. Weeks reported that he could not determine whether or not the industrial exposure caused Claimant's asthma, he also concluded that it had exacerbated her asthma. Although NIOSH confirmed that the asthma outbreak had ended, it also reported that affected individuals were no longer working. This evidence, at most, supports an inference that Claimant's exacerbation could have resolved by November 15, 1988, not that it probably had resolved by then. The evidence justified an independent medical examination to determine causation, but it did not justify a termination for lack of causation.

2. Because the Award is set aside, Pacific will have the opportunity to present any evidence or provide any explanation for the twenty-day letter at a hearing *de novo. See, e.g., Employers Mut. Liab. Co. v. Industrial Comm'n*, 115 Ariz. 439, 442, 565 P.2d 1300, 1303 (App.1977).