316 P.3d 1241

**PORTEADORES DEL NOROESTE S.A. DE, C.V., uninsured employer, Petitioner**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent**

**Adan Valenzuela, Respondent Employee**

**Special Fund Division/No Insurance Section, Respondent Party in Interest.**

**No. 1 CA–IC 12–0038.**

Court of Appeals of Arizona, Division 1.

Jan. 14, 2014.

Weeks Law Firm PLLC, Tucson By Stephen M. Weeks, for Petitioner.

Industrial Commission of Arizona, Phoenix By Andrew F. Wade, for Respondent.

Taylor & Associates, PLLC, Phoenix By Weston S. Montrose, for Respondent Employee.

Special Fund Division/No Insurance Section By Kathryn E. Harris, for Respondent Party in Interest.

Judge MICHAEL J. BROWN delivered the opinion of the Court, in which Presiding Judge SAMUEL A. THUMMA and Chief Judge DIANE M. JOHNSEN joined.

## OPINION

BROWN, Judge.

¶ 1 Adan Valenzuela, a citizen and resident of Mexico, was injured in a work-related accident in Arizona. The question we address is whether his employer, a corporation located in Mexico, was subject to Arizona's workers' compensation statutes at the time of Valenzuela's injury. For the following reasons, we reject the employer's argument that requiring a foreign employer to comply with such statutes would violate federal law. We therefore affirm the decision of the administrative law judge ("ALJ").

## BACKGROUND

¶ 2 Porteadores Del Noroeste S.A. DE, C.V. ("Porteadores") transports diesel fuel from Phoenix, Arizona to Nogales, Mexico. Valenzuela, a Porteadores truck driver, was involved in a rollover accident north of Nogales and sustained numerous injuries. Valenzuela first received treatment at a Nogales hospital and was then transferred to University Medical Center ("UMC") in Tucson. He was discharged from UMC shortly thereafter and returned to Mexico, where he promptly requested a determination of disability and benefits from the Instituto Mexicano del Seguro Social ("IMSS").[1] Porteadores did not have Arizona workers' compensation coverage for its employees at the time of Valenzuela's accident.

¶ 3 IMSS determined that Valenzuela qualified for disability benefits and began paying him benefits. IMSS also provided him medical examinations and treatment until he was cleared to work several months after the accident. IMSS declined, however, to pay more than $17,000 in billings from Dr. Ramirez, a physician in Mexico who practices outside the IMSS network.

¶ 4 Valenzuela filed an injury report with the Industrial Commission of Arizona ("ICA") in September 2010, naming Porteadores as his employer.[2] Because the ICA claims division was unable to locate a valid Arizona workers' compensation policy in effect for Porteadores, the matter was referred to the Special Fund/No Insurance Section ("Special Fund"). The Special Fund issued a notice of determination, accepting the claim and classifying Porteadores as a "non-insured employer."

¶ 5 At the time Valenzuela filed his injury report, the only medical bills presented to the Special Fund for payment were those related to the emergency visit to UMC, which the Special Fund paid. Valenzuela later asked the Special Fund to pay Dr. Ramirez's bills. The Special Fund determined it would not pay the Ramirez bills on

---

1. It is undisputed that as an employee of a Mexico-based company, Valenzuela was covered by IMSS. According to the record, Mexico's labor laws require all employers to participate in IMSS, which compensates an injured employee for one-hundred percent of daily wages lost as a result of a work-related injury. IMSS also covers medical expenses arising from work-related injuries. If an employee elects to obtain medical treatment outside the IMSS system, however, the employee is responsible for payment of the medical expenses. From the record, neither UMC nor the Nogales hospital where Valenzuela was initially treated is within the IMSS network.

2. Valenzuela was actually hired by Cazali Administradora de Personal, S. de R.L. de. C.V., which contracts with Porteadores to provide drivers for Porteadores' long-haul trucking operations. Porteadores does not challenge the ALJ's finding that "Porteadores is the employer under the lent employee doctrine." *See Word v. Motorola*, 135 Ariz. 517, 519–20, 662 P.2d 1024, 1026–27 (1983) (explaining that if the lent employee doctrine applies, both employers are liable for workers' compensation).

the ground that "full compensation benefits have been paid to [Valenzuela] by the [IMSS]." The Special Fund also determined that it "ha[d] a lien against any third party recovery to the extent of benefits paid or payable." Valenzuela protested both determinations and requested a hearing, alleging he had not received full compensation.

¶ 6 Prior to the hearing, Porteadores filed a motion to dismiss based on lack of subject matter jurisdiction, arguing the ICA did not have jurisdiction over a "company located solely within Mexico[.]" The Special Fund responded that if the ICA determined it lacked subject matter jurisdiction over Porteadores, that determination necessarily would mean the Special Fund had no obligation to pay benefits to Valenzuela. The ALJ denied the motion, concluding that the ICA "has both subject matter jurisdiction and personal jurisdiction." Porteadores moved for reconsideration, asserting the North American Free Trade Agreement ("NAFTA") controlled its corporate activities in the United States and therefore the ICA lacked subject matter jurisdiction.

¶ 7 Following the hearing, the ALJ denied Porteadores' motion to reconsider, and determined that Valenzuela was "entitled to medical, surgical, and hospital benefits as a result of the injury," including the medical care provided by Dr. Ramirez. Recognizing that a claimant is not entitled to "exceed the benefits" that could be received in any one jurisdiction, the ALJ concluded the "State of Arizona" is entitled to a credit for workers' compensation benefits paid in Mexico, to be calculated after determinations of an average monthly wage, temporary disability benefits, and impairment.

¶ 8 Porteadores and the Special Fund requested review of the decision upon hearing.

Porteadores argued that the ALJ failed to adequately address whether there was subject matter jurisdiction, asserting conflicts with federal statutes and constitutional provisions. The Special Fund asserted the decision would "alter the legal obligations of the applicant and the [Special Fund] in contravention of Arizona law." In the decision upon review, the ALJ affirmed, finding that federal law does not "preempt Arizona law in this matter." Porteadores then filed this statutory special action.[3]

## DISCUSSION

¶ 9 Porteadores argues that requiring a foreign employer to comply with Arizona's workers' compensation laws would violate federal law.[4]

■ ¶ 10 In reviewing an ICA award, we "make an independent determination of legal issues," *Anton v. Indus. Comm'n*, 141 Ariz. 566, 569, 688 P.2d 192, 195 (App.1984), but review factual determinations "in a light most favorable to sustaining the Commission's award," *id.* Because the workers' compensation statutes and constitutional provisions "are remedial and designed to provide compensation for those persons injured in business or industry," we liberally construe the statutes and constitutional provisions to carry out that purpose. *Id.*

¶ 11 States have a strong interest in protecting employees working within their borders. *DeCanas v. Bica*, 424 U.S. 351, 356–58, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976) (noting that states have broad authority to regulate the employment relationship to protect workers by passing workers' compensation laws) *superseded by statute on other grounds as*

---

**3.** The Special Fund supported Porteadores' position that the ICA lacked jurisdiction over Valenzuela's claim, and counsel for the Special Fund filed a notice of appearance in this special action, but did not file a brief.

**4.** Although presented to the ALJ as an issue of subject matter jurisdiction, on appeal Porteadores reframed the argument, contending that it falls outside the scope of Arizona's workers' compensation laws and therefore has no obligation to reimburse the Special Fund for monies disbursed

to Valenzuela. For purposes of resolving this case, we discern no material difference between the two arguments. *See White Mountain Apache Tribe v. Indus. Comm'n*, 144 Ariz. 129, 136, 696 P.2d 223, 230 (App.1985) ("It has long been the law in Arizona that the [ICA] is without jurisdiction to adjudicate a 'claim' arising out of an injury where the employer was not under the act.").

*stated in Chamber of Comm. v. Whiting,* ——U.S. ——, 131 S.Ct. 1968, 179 L.Ed.2d 1031 (2011). Consistent with that principle, the Arizona Constitution requires the legislature to enact workers' compensation laws "in order to assure and make certain a just and humane compensation law" and relieve workers and their dependents from "burdensome, expensive and litigious remedies." Ariz. Const. art. 18, § 8.

¶ 12 To implement the constitutional mandate, our legislature enacted the Arizona Workers' Compensation Act, Arizona Revised Statutes ("A.R.S.") sections 23–901 to –1104, which requires employers to either (1) obtain a workers' compensation policy for their employees, or (2) provide proof of financial ability to pay the compensation directly. A.R.S. § 23–961(A)(1)–(2). The Act applies to "employers and their employees engaged in intrastate and also in interstate and foreign commerce[.]" A.R.S. § 23–903. As defined in A.R.S. § 23–902(A), "employers" subject to the Act include "every person who employs any workers or operatives regularly employed[.]" An employer that does not carry the requisite workers' compensation insurance is liable for all benefits paid to injured employees and subject to civil penalties, including administrative costs, necessary expenses, and attorneys' fees. A.R.S. § 23–966(C).

◾ ¶ 13 Additionally, the Act provides that an employee injured in Arizona is eligible for workers' compensation benefits even if the employee was not hired in the state. *See* A.R.S. § 23–904(B).[5] The ICA has "ex-clusive jurisdiction to determine all issues of law and fact relating to a claimant's entitlement to compensation benefits under the [Act]." *Rios v. Indus. Comm'n,* 120 Ariz. 374, 376, 586 P.2d 219, 221 (App.1978); *see also* A.R.S. § 23–921.

◾ ¶ 14 It is well-settled that states have the power and authority "to regulate the status of employer and employee, and to enforce the public policy of the state, as it relates to work[ers]' compensation for employees engaged in interstate or foreign commerce" unless abrogated by federal law. *See, e.g., Indus. Comm'n of Ariz. v. J. & J. Constr. Co.,* 72 Ariz. 139, 145, 231 P.2d 762, 766 (1951) (citing state and federal cases for the proposition that the majority of states and the United States Supreme Court recognize the authority of individual states to regulate workers' compensation for employees engaged in interstate or foreign commerce "except where the United States has a different rule"). Porteadores argues nonetheless that Arizona's authority to regulate workers' compensation relating to interstate commerce is preempted by federal law. Specifically, Porteadores asserts that (1) NAFTA and the North American Agreement on Labor Cooperation ("NAALC") preempt workers' compensation claims that are covered by IMSS; and (2) the Foreign Commerce Clause prevents application of workers' compensation statutes to Porteadores' employees engaged in business in Arizona.

### A. Lack of Authority to Assert Federal Preemption

¶ 15 Following extensive negotiations among the governments of the United States,

---

**5.** As such, our court has concluded that "[a]n employer who has employees working in Arizona is required to have Arizona work[ers'] compensation insurance[.] There are no geographical limits imposed by the statute[.]" *Agee v. Indus. Comm'n,* 10 Ariz.App. 1, 4, 455 P.2d 288, 291 (1969). Furthermore, we have held that an injured employee may receive benefits from more than one system. *See, e.g, Jordan v. Indus. Comm'n,* 117 Ariz. 215, 217, 571 P.2d 712, 714 (App.1977). After the ALJ's award, the legislature amended A.R.S. § 23–904. The amended statute, effective September 13, 2013, provides in part that a worker who "has a claim under the workers' compensation laws of … [a] foreign nation for the same injury … as the claim filed in this state … is entitled to the full amount of compensation due under the laws of this state." A.R.S. § 23–904(G). In the event the worker receives compensation "under the laws of the other state, … the insurer shall pay any unpaid compensation to the worker up to the amount required by the claim under the laws of this state." *Id.* Because the amended statute was not in effect when Valenzuela made his claim, it does not apply here. *See* A.R.S. § 23–904(H) (explaining the statute applies to "[c]laims made after the effective date … regardless of the date of injury").

Canada, and Mexico, NAFTA was signed on December 17, 1992. *Made in the USA Found. v. United States,* 242 F.3d 1300, 1302–03 (11th Cir.2001). Congress passed, and the President signed, the NAFTA Implementation Act, effective January 1, 1994, which approved NAFTA and created comprehensive legislation to implement and enforce NAFTA's provisions. *Id.; see also* 19 U.S.C.A. §§ 3301 to –3473. The Implementation Act provides:

> No State law, or the application thereof, may be declared invalid as to any person or circumstance on the ground that the provision or application is inconsistent with [NAFTA], *except in an action brought by the United States* for purposes of declaring such law or application invalid.

19 U.S.C.A. § 3312(b)(2) (emphasis added). Additionally, subsection (c) states as follows:

> *No person other than the United States—*
>
> (1) Shall have any cause of action or defense under—
>
> (A) [NAFTA] or by virtue of Congressional approval thereof, or
>
> (B) [NAALC]; or
>
> (2) may challenge, in any action brought under any provision of law, any action or inaction by any department, agency, or other instrumentality of the United States, any State or any political subdivision of a State on the ground that such action or inaction is inconsistent with [NAFTA] ... or [NAALC].

19 U.S.C.A. § 3312(c)(2) (emphasis added).

¶ 16 This unambiguous language provides that only the United States may challenge a state law or state action on the ground that it conflicts with NAFTA or NAALC. Given this express limitation, Porteadores is precluded from asserting that Arizona's workers' compensation statutes, or any application thereof, are preempted by NAFTA or NAALC. *See Dandamudi v. Tisch,* 686 F.3d 66, 81 (2d Cir.2012) (rejecting preemption argument by individuals based on NAFTA Implementation Act); *Berrio-*

*choa Lopez v. U.S.,* 309 F.Supp.2d 22, 28–29 (D.D.C.2004) (stating that NAFTA Implementation Act bars private causes of action); *Leclerc v. Webb,* 270 F.Supp.2d 779, 804 (E.D.La.2003) (concluding individuals lacked standing to challenge state law under NAFTA because of NAFTA Implementation Act); *In re Collins,* 252 Neb. 222, 561 N.W.2d 209, 211 (1997) (precluding private action based on NAFTA Implementation Act).

¶ 17 Relying on *Hartford Enters. v. Coty,* 529 F.Supp.2d 95, 103–104 (D.Maine 2008), Porteadores nonetheless contends the limitation on standing to challenge state law under NAFTA applies only to *express* preemption challenges. *See Chaurasia v. Gen. Motors Corp.,* 212 Ariz. 18, 28, ¶ 38, 126 P.3d 165, 175 (App.2006) ("Express preemeption exists when Congress has expressly stated its intention that state law be preempted."). To the extent *Hartford* may suggest the prohibition in the NAFTA Implementation Act applies only to claims of express preemption, we disagree. The plain language of the Implementation Act does not support such a narrow reading. Rather, the prohibition against using NAFTA to invalidate state laws extends to any argument that a state law is "inconsistent" with NAFTA. *See* 19 U.S.C.A. § 3312(b)(2) ("No state law ... may be declared invalid ... on the ground that the provision or its application is *inconsistent* with [NAFTA.]" (emphasis added)); *Dandamudi,* 686 F.3d at 81 (rejecting all preemption arguments made by a party other than the United States "because the NAFTA Implementation Act allows only the United States to bring actions against state laws inconsistent with NAFTA"). Therefore, Porteadores lacks the authority to challenge Arizona's workers' compensation laws under NAFTA.

### B. Foreign Commerce Clause

¶ 18 Arizona's legislative and regulatory authority is subject to the Commerce Clause, which grants Congress the power to regulate interstate and foreign commerce. U.S. Const. art. I, § 8, cl. 3 (granting Con-

gress the power "[t]o regulate commerce with foreign Nations, and among the several States, and with Indian Tribes"). Particularly in the "unique context of foreign commerce," a state's authority may be restrained because of "the special need for federal uniformity." *Wardair Canada, Inc. v. Florida Dep't of Rev.*, 477 U.S. 1, 7–8, 106 S.Ct. 2369, 91 L.Ed.2d 1 (1986). The federal government "must speak with one voice when regulating commercial relations with foreign governments." *Japan Line, Ltd. v. Los Angeles Cnty.*, 441 U.S. 434, 449, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979) (internal citations and quotations omitted). Determining whether state law violates federal uniformity and Congress' ability to speak with "one voice," however, inevitably turns on "specific indications of congressional intent" to set uniform federal policy. *See Barclays Bank PLC v. Franchise Tax Bd. Of California*, 512 U.S. 298, 324, 114 S.Ct. 2268, 129 L.Ed.2d 244 (1994) (looking to "specific indications of congressional intent" to determine whether Congress had spoken with "one voice"); *see also Wardair Canada, Inc.*, 477 U.S. at 9–12, 106 S.Ct. 2369 (discerning "federal policy" through congressional intent).

¶ 19 According to Porteadores, application of Arizona's workers' compensation laws here would impair federal uniformity in an area where it is essential because NAFTA and NAALC would be undermined. Even assuming, however, that NAFTA and NAALC represent "one voice" on general labor and trade matters among the United States, Mexico, and Canada, we discern no "specific indications of congressional intent" barring application of Arizona's workers' compensation laws to Porteadores. The only argument Porteadores proffers for its proposition of federal uniformity is that NAFTA and NAALC represent "one voice" of Congress on trade and labor relations with Mexico and Canada. We fail to see how these enactments represent a uniform federal policy concerning the applicability of state workers' compensation laws. In fact, as the ALJ observed, noticeably absent from NAFTA and NAALC is any discussion of workers' compensation. *See* Tequila J. Brooks, *Cross–Borders Workers' Compensation and Social Security Policy in North America: An Analysis of the NAFTA Trucking Dispute through the Eyes of a Workers' Compensation Practitioner*, 42, No. 1 International Association of Industrial Accident Boards and Commissions Journal 121, 126, 133, 135 (Spring 2005) (criticizing NAFTA and NAALC for not addressing workers' compensation).

¶ 20 Porteadores fails to cite, and our research has not revealed, any authority supporting a contention that the federal government has adopted a uniform federal policy regarding workers' compensation principles applicable to foreign companies doing business in the United States. Accordingly, we will not presume that the Foreign Commerce Clause bars application of Arizona's workers' compensation statutes to foreign employers. *See Lapare v. Indus. Comm'n of Ariz.*, 154 Ariz. 318, 321, 742 P.2d 819, 822 (App.1987) (recognizing there is a "strong presumption supporting the constitutionality of a legislative enactment and the party asserting its unconstitutionality bears the burden of overcoming the presumption"). Nor are we persuaded that Arizona's workers' compensation laws upset the delicate balance of federal uniformity or inhibit the federal government's ability to speak with "one voice" on the issue.[6]

## CONCLUSION

¶ 21 Arizona's authority to regulate and enforce workers' compensation for employees

6. Porteadores also argues that subjecting it to Arizona's workers' compensation laws would result in double taxation and thus violate the Foreign Commerce Clause. Because this argument was not presented to the ALJ, we decline to address it. *See T.W.M. Custom Framing v. Indus. Comm'n of Ariz.*, 198 Ariz. 41, 44, ¶ 4, 6 P.3d 745, 748 (App.2000) ("[T]his Court generally will not consider on appeal issues not raised before the IC."); *Teller v. Indus. Comm'n of Ariz.*, 179 Ariz. 367, 371–72, 879 P.2d 375, 379–80 (App. 1984) ("The rationale for the general rule [refusing to address issues not presented before the ALJ] is that a petitioner must exhaust administrative remedies because the court assumes that an ALJ would have decided an issue correctly if the petitioner had presented it to the ALJ.").

engaged in foreign commerce does not contravene federal law. Accordingly, the ALJ properly determined that Porteadores is subject to Arizona's workers' compensation statutes in effect at the time of Valenzuela's injury. We therefore affirm the ALJ's award.