722 P.2d 392

**Frank CAPUANO, Petitioner Employee,**

**v.**

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**B & B Masonry, Respondent Employer,**

**Aetna Fire Underwriters Insurance Company, c/o INA/AETNA, Respondent Carrier.**

**No. 1 CA–IC 3397.**

Court of Appeals of Arizona, Division 1, Department B.

July 15, 1986.

Law Offices of Stephen L. Weiss by Barbara Rodriguez-Bush and Stephen L. Weiss, Phoenix, for petitioner employee.

Dennis P. Kavanaugh, Chief Counsel, The Indus. Com'n of Arizona, Phoenix, for respondent.

Moore, Long & Lester by James Long, Phoenix, for respondent employer/carrier.

## OPINION

JACOBSON, Presiding Judge.

The issue in this special action review concerns the *res judicata* effect of two unprotested notices of supportive care on a subsequent determination that claimant's industrial injury caused his psychiatric condition. We conclude the doctrine of *res judicata* is inapplicable to supportive care awards.

Claimant sustained a work-related back injury on September 7, 1979. After one year of conservative treatment, his continuing complaints led his treating physician to seek consultations with a neurologist and psychiatrist. Based upon a diagnosis of depression both due to marital problems and chronic pain from the industrial injury, the respondent carrier authorized two weeks of in-patient treatment at St. Luke's Pain and Stress Center in November, 1980, January, 1981, and June, 1981. The carrier also paid for monthly out-patient sessions with a psychiatrist through September 2, 1981, after terminating benefits effective August 27, 1981, with an unscheduled, permanent, partial disability for petitioner's back condition. The closing medical report accepted recommendations of supportive maintenance benefits for medication, back supports, and two to three visits per year with the attending orthopedic surgeon.

After the August, 1981 closure, the carrier continued paying for monthly psychiatric visits and medications until April 8, 1983. At that time, it issued a notice of supportive medical maintenance benefits providing for medication plus three office visits per year with a psychiatrist, Robert Barnes, M.D. Dr. Barnes wrote to the carrier on April 20, 1983 and June 3, 1983,

requesting authorization of bi-monthly office visits. The carrier subsequently issued an amended notice of supportive medical maintenance benefits on June 9, 1983, providing for five office visits per year plus specified medications. Both notices carried a 90-day protest clause and stated the notice would be reviewed on an annual basis. Dr. Barnes requested authorization for different medications and additional office visits in September and December, 1983. Respondent carrier refused to pay for additional medication or office visits, contending claimant's existing supportive care allotment was adequate. Claimant accordingly filed a request for investigation pursuant to A.R.S. § 23–1061(J), and hearings were conducted.

During these hearings, psychiatrist Eric Marcus, M.D., testified claimant had no industrially related psychiatric disorder and was not in need of psychiatric treatment or medication for his mental state. He concluded claimant's current psychiatric condition was not caused by the industrial injury, but was rather attributable to a preexisting, stationary personality disorder.

Dr. Barnes testified he diagnosed claimant's condition as low back pain syndrome from musculoskeletal trauma, and reactive depression. In his opinion, to a reasonable degree of medical probability, the September, 1979 industrial injury contributed to this condition. Although claimant experienced a divorce and the death of a child after the industrial accident, Dr. Barnes' opinion was unaltered regarding the causal relation between claimant's industrial injury and his depression. Dr. Barnes recommended continued treatment and medication.

The administrative law judge issued an award stating the sole issue to be determined was applicant's entitlement to supportive medical maintenance benefits, stating "the dispositive issue is whether ... applicant is afflicted with a psychiatric condition causally related to the September 7, 1979 industrial injury." The judge resolved conflicting medical evidence con-

cerning this question by accepting the opinion of Dr. Marcus. Further, the judge found the carrier's payment of medical benefits did not estop its denial of continuing liability for the condition or preclude a finding that claimant's present condition was not causally related to the industrial injury.[1] The award granted supportive care for claimant's orthopedic condition and authorized five office visits per year for prescribing medications.

The decision upon review both affirmed the award and supplemented it regarding whether the carrier was estopped to deny benefits and determine causation, with citations to *Noble v. Industrial Commission*, 140 Ariz. 571, 683 P.2d 1173 (App.1984), *Whitley v. Industrial Commission*, 15 Ariz.App. 476, 489 P.2d 734 (1971) and *Marsh v. Industrial Commission*, 15 Ariz. App. 5, 485 P.2d 595 (1971).

On appeal, claimant contends the doctrine of *res judicata* deprived the Industrial Commission of jurisdiction to determine the causal relationship between his industrial injury and his medical condition, because the carrier provided supportive medical maintenance benefits for two years pursuant to two unprotested notices of supportive care. Respondents maintain the Industrial Commission is not precluded from redetermining this causal relationship for two reasons: (1) notices of supportive care are not entitled to the same finality as notices of claim status; and (2) petitioner failed to file a formal written claim for psychiatric benefits so that principles of finality similarly do not apply to preclude a determination of causation.

■ In an analogous situation, we determined finality for one purpose does not require application of finality for a different purpose. In *Superlite Builders v. Industrial Commission*, 126 Ariz. 51, 612 P.2d 507 (App.1980), we held an award for temporary benefits does not determine with finality the relation of the temporary condition to a future, permanent impairment or disability. Similarly, we hold an

award for supportive care subject to annual review does not determine with finality the effect of the claimant's original, industrially related condition upon a future continuing need for supportive care benefits.

■ Supportive care benefit awards are also similar to awards for temporary disability due to industrial aggravation of a preexisting condition, where benefits are awarded until the aggravation becomes stationary. *See, e.g., Arellano v. Industrial Commission*, 25 Ariz.App. 598, 545 P.2d 446 (1976). Although the temporary disability may have been caused by an industrial incident, the medical evidence must establish the claimed, permanent disability arises from the industrial injury, rather than the natural progression of a preexisting condition. In the present case, if the psychiatric condition was originally caused by the industrial incident, the claimant had the burden of proving the continuing industrial effect upon the condition in order to be entitled to future psychiatric benefits.

■ More importantly, however, we must address the argument that unprotested notices of supportive care are entitled to the same *res judicata* status on the issue of causation as unprotested notices of claim status. We reject this contention based upon the important distinctions existing between these two procedural mechanisms.

The Arizona Workers' Compensation Act does not specifically authorize awards of supportive medical benefits, which are designed to prevent or reduce the continuing symptoms of an industrial injury after the injury has become stablilized. Nonetheless, the propriety of granting such benefits has been recognized where a continuing need for such care is causally related to the industrial injury. *Bergstresser v. Industrial Commission*, 118 Ariz. 155, 575 P.2d 354 (App.1978); *Janis v. Industrial Commission*, 27 Ariz.App. 263, 553 P.2d 1248 (1976); *Continental Casualty Co. v. Industrial Commission*, 23 Ariz.App. 294,

---

1. At the first hearing, counsel stated the carrier was not seeking reimbursement for prior sup-

portive psychiatric benefits; the carrier only disclaimed liability for future payments.

532 P.2d 869 (1975); *Home Insurance Co. v. Industrial Commission,* 23 Ariz.App. 90, 530 P.2d 1123 (1975).

As in the present case, informal procedures are often utilized by the carrier voluntarily issuing notices of supportive care in lieu of commission awards. Where the carrier denies supportive care, no notice is issued. Rather, the Commission conducts an investigation regarding the issue of supportive care pursuant to A.R.S. § 23–1061(J). If the issues are still unresolved after this investigation, the matter is transferred to the hearing division.[2]

Although notices of claim status and supportive care both incorporate ninety day protest clauses, a notice of supportive care may be reviewed and adjusted at any time, under A.R.S. § 23–1061(J), without resort to the formal reopening procedures required to alter notices of claim status. Furthermore, here the notice of supportive care stated it would be reviewed by the carrier on an annual basis. In our opinion, the conclusions of this notice may not be characterized as *res judicata* in the absence of a § 23–1061(J) hearing. Unprotested notices of claim status are, in contrast, by statute made final adjudications that resolve whether a claimant is entitled to benefits. Formal procedures for reopening constitute the only avenue toward re-evaluating a notice of claim status determination.

Contrary to claimant's contention, we do not interpret the respondent carrier's voluntary payment of supportive care benefits as a conclusive acceptance of liability for claimant's psychiatric condition. We have explicitly declined to adopt this position, ruling that payment of medical benefits does not preclude a succeeding determination the claimant's condition is not causally related to the industrial injury. *Noble v. Industrial Commission, supra; Whitley v. Industrial Commission, supra.*

Similarly, a carrier's voluntary payment of supportive care benefits does not bar its request for a later determination whether a claimant's current condition is still causally related to the industrial injury. Thus, the administrative law judge below properly decided the notice of supportive care was not entitled to *res judicata* effect on the question of causation.

▮ The administrative law judge was entitled to resolve conflicts in the medical evidence regarding the causation issue by accepting the testimony of Dr. Marcus over that of Dr. Barnes. Dr. Marcus' testimony did not address the initial causal relationship of the psychiatric condition to the industrial injury at the time the notices of supportive care were issued. His opinion was rather limited to petitioner's current psychiatric condition, which he concluded was not related to the industrial injury. His report noted "a number of non-industrial related life stresses," and a preexisting, stationary personality disorder unrelated to the industrial injury.

Based upon acceptance of Dr. Marcus' testimony, the administrative law judge could reasonably conclude claimant failed to establish a causal relationship sufficient to justify supportive care benefits for an industrially related psychiatric condition. We find the evidence supports the administrative law judge's denial of future supportive psychiatric benefits.

The award is affirmed.

CORCORAN and CONTRERAS, JJ., concur.

---

2. A.R.S. § 23–1061(J) provides:
   The commission shall investigate and review any claim in which it appears to the commission that the claimant has not been granted the benefits to which such claimant is entitled. If the commission determines that payment or denial of compensation is improper in any way, it shall hold a hearing pursuant to § 23–941 within sixty days after receiving notice of such impropriety.