19 P.3d 1237

Dennis BROWN, Petitioner Employee,

v.

The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,

Michael Nicholas, Inc., Respondent
Employer,

TIG Insurance Co., Respondent Insurer.

No. 2 CA–IC 00–0023.

Court of Appeals of Arizona,
Division 2, Department B.

Feb. 27, 2001.

Tretschok & McNamara, P.C., by Patrick R. McNamara, Tucson, for petitioner Employee.

The Industrial Commission of Arizona, by Anita R. Valainis, Phoenix, for respondent.

Cross & Lieberman, P.A., by Donald L. Cross and Lisa M. LaMont, Phoenix, for respondents Employer and Insurer.

## OPINION

HOWARD, Presiding Judge.

¶ 1 In this statutory special action, petitioner/employee Dennis Brown contends that the administrative law judge's (ALJ) award eliminating a previously awarded medication, Zocor, from Brown's supportive care benefits violates preclusion or estoppel principles or

was unsupported by the evidence. Because we agree that the issue previously had been determined in Brown's favor and the respondents did not prove any material changes in Brown's medical condition, we set aside the award.

## BACKGROUND

¶ 2 In 1993, Brown suffered a myocardial infarction (heart attack) while working for respondent/employer Michael Nicholas, Inc. After a hearing on the compensability of the injury, an ALJ determined that Brown's injury was compensable because his employment was a "substan[ti]al contributing cause" of his heart attack. The ALJ entered an award for medical and temporary disability compensation.

¶ 3 In 1995, respondent insurer terminated Brown's temporary disability benefits, asserting the injury was stable and had resulted in some permanent disability. Brown requested a hearing to determine his permanent disability benefits and supportive care benefits. At the hearing, the primary issue regarding supportive care benefits was whether Brown was entitled to medication to prevent or reduce the continuing symptoms of his heart attack. Specifically, Brown sought prescription medication to treat his angina pectoris (chest pain) and his elevated low density lipoprotein (LDL) cholesterol.

¶ 4 The insurer's expert, Dr. Phibbs, testified that Brown's underlying condition, atherosclerosis, had caused his heart attack and his subsequent chest pain. He explained that a heart attack damages or destroys heart muscle and that the residual effects of a heart attack depend on the amount of heart muscle that has "died." Dr. Phibbs testified that, if the amount of dead muscle is small, as in Brown's case, "there is no significant effect on the pumping action of the heart." And, therefore, Brown did not need medication to treat his heart attack.

¶ 5 Dr. Phibbs also opined that the 1993 heart attack had not caused Brown's subse-

quent chest pain, but stated that Brown should receive pharmaceutical treatment for his underlying atherosclerosis, identifying beta blockers, aspirin, cholesterol-controlling medicine, and nitroglycerin as appropriate medications. In contrast, Brown's expert testified that Brown's chest pain was causally related to his heart attack and he needed calcium channel blockers and cholesterol-controlling medications because of the heart attack.

¶ 6 The ALJ resolved the conflict in medical testimony by adopting Dr. Phibbs's opinions, but nonetheless awarded Brown supportive care benefits that included "medications as recommended by Dr. Phibbs." The ALJ did not explicitly state that the medications were required to treat Brown's heart attack. Neither Brown nor the insurer requested review, and the award became final.

¶ 7 For almost three years, the insurer provided Brown with supportive care benefits that included the prescription medications Zocor, for cholesterol control, and Cardizem, a calcium channel blocker:[1] The insurer then arranged for an independent medical examination of Brown, which was conducted on May 11, 1999, by Dr. Fenster, who also reported that Zocor was not needed to treat the industrially related heart attack. The insurer thus terminated Brown's supportive care benefits, and Brown requested a hearing.

¶ 8 At the hearing, which was held before a different ALJ, both parties presented expert testimony. Brown's expert again testified that the medications were necessitated, at least in part, by the heart attack. The insurer's expert, Dr. Fenster, testified that Zocor and Cardizem are both treatments for Brown's underlying atherosclerosis; Zocor lowers LDL cholesterol, a risk factor for atherosclerosis, and Cardizem reduces the frequency or severity of chest pain, a complication of atherosclerosis.[2] He also recommended that Brown continue treatment with Zocor and Cardizem as Dr. Phibbs had recommended in 1995, but emphasized that "[Zocor] is not being used because he has had a heart attack. It is being used because [Brown] has an elevated LDL cholesterol."

¶ 9 The second ALJ resolved the conflicts in expert testimony by adopting Dr. Fenster's opinions and entered an award eliminating Zocor from Brown's supportive care benefits, finding it was "no longer necessary to treat the industrial injury." After a request for review, the ALJ summarily affirmed the award. This statutory special action followed.

## DISCUSSION

■ ¶ 10 Brown argues that because the previous supportive care award had granted "medications as recommended by Dr. Phibbs," and the circumstances had not changed after the award, the present award eliminating Zocor violates principles of issue preclusion.[3] In contrast, respondents argue that issue preclusion does not apply because supportive care benefits are "subject to change as the facts of the situation dictate." We defer to the ALJ's factual determinations but review de novo whether issue preclusion applies. *Bayless v. Industrial Comm'n,* 179 Ariz. 434, 439, 880 P.2d 654, 659 (App.1993).

---

1. Only Brown's entitlement to Zocor is at issue here.

2. On cross-examination, however, Dr. Fenster admitted that Brown's heart attack contributed, indirectly, to his chest pain. He also admitted that a heart attack increases the risks associated with atherosclerosis and that, therefore, treatment of the risk factors associated with atherosclerosis, including elevated LDL cholesterol, is emphasized. Moreover, he agreed with the statement, "[The use of Zocor is] considered more important because a patient who has had [a heart attack] is at greater risk for the various complications that [Dr. Fenster had] described ... than in [a] patient who has the same elevated LDL levels but has not had [a heart attack]."

3. Although Brown's briefs do not identify whether he is relying on claim preclusion or issue preclusion, he relied solely on issue preclusion before the ALJ. We therefore will limit our discussion to that issue. *See Teller v. Industrial Comm'n,* 179 Ariz. 367, 371, 879 P.2d 375, 379 (App.1994) ("An issue generally cannot be raised for the first time on review.").

¶ 11 Issue preclusion prevents a party from relitigating an issue that has already been decided. *See Circle K Corp. v. Industrial Comm'n,* 179 Ariz. 422, 425, 880 P.2d 642, 645 (App.1993); *Western Cable v. Industrial Comm'n,* 144 Ariz. 514, 518, 698 P.2d 759, 763 (App.1985). It only applies to those issues that were actually litigated, decided, and essential to a final judgment. *Bayless,* 179 Ariz. at 439, 880 P.2d at 659; *Circle K,* 179 Ariz. at 425, 880 P.2d at 645; *Western Cable,* 144 Ariz. at 518, 698 P.2d at 763. "The party asserting [issue] preclusion has the burden of proving that an issue was in fact litigated and determined and that this determination was necessary." *Bayless,* 179 Ariz. at 439, 880 P.2d at 659.

¶ 12 Because rigid application of issue preclusion in workers' compensation cases may result in unfairness to insurers or injured workers, both the legislature and courts have recognized the need for some flexibility. *See Stainless Specialty Manufacturing Co. v. Industrial Comm'n,* 144 Ariz. 12, 16, 695 P.2d 261, 265 (1985). For example, the legislature has provided that an award determining monthly earning capacity may be rearranged if there has been a change in earning capacity related to the industrial injury and that an employee may reopen an award based on a new, additional, or previously undisclosed condition. *See* A.R.S. §§ 23–1044(F), 23–1061(H).

¶ 13 In *Stainless,* our supreme court outlined the purpose for the statutory reopening process, stating:

"no matter how competent a commission's diagnosis of claimant's condition and earning prospects at the time of hearing may be, that condition may later change markedly for the worse, or may improve, or may even dear up altogether.... [T]he objectives of the legislation are best accomplished if the commission can increase, decrease, revive, or terminate payments to correspond to *claimant's changed condition.*"

*Id.* at 16, 695 P.2d at 265 (emphasis added), *quoting* 3 Arthur Larson, *The Law of Work-*

*ers' Compensation* § 81.10 at 15–528 (1983); *see also Zagar v. Industrial Comm'n,* 40 Ariz. 479, 486–87, 14 P.2d 472, 474 (1932) ("[I]t is common knowledge that the results of physical injuries are often not determinable at the time they are received, and to require that they be then stated is to demand the performance of the impossible."). In contrast, we apply the doctrine of issue preclusion, and we do not permit reopenings or rearrangements, if there has merely been a change in medical opinion. *See Stainless,* 144 Ariz. at 19, 695 P.2d at 268. And we apply issue preclusion when evidence is presented at the current proceeding that is not qualitatively different from evidence presented at a prior proceeding. *Bayless,* 179 Ariz. at 441, 880 P.2d at 661.

¶ 14 The same competing interests of finality and fairness are also present when considering whether issue preclusion should prevent an insurer from relitigating awards of supportive care benefits. The essential question in determining supportive care benefits is whether the employee needs ongoing treatment "to prevent or reduce the continuing symptoms of an industrial injury after the injury has become stab[il]ized." *Capuano v. Industrial Comm'n,* 150 Ariz. 224, 226, 722 P.2d 392, 394 (App.1986). But resolution of this issue is necessarily transitory because it depends on the employee's evolving physical condition and its relationship to the industrial injury. *See id.* at 227, 722 P.2d at 395. In this respect, therefore, an insurer's attempt to change supportive care benefits is like a reopening or rearrangement. Thus, when an insurer attempts to change an award of supportive care benefits, we believe issue preclusion would apply if there is merely a change in medical opinion or the evidence presented is not qualitatively different from evidence presented at a prior proceeding, but would not apply if there is a change in physical condition or in medical procedures. *See Stainless.*

¶ 15 Here, Dr. Fenster's testimony is qualitatively no different than Dr. Phibbs's testimony in 1995. Both doctors opined that Brown's heart attack did not cause his ath-

erosclerosis and that the recommended medications were intended to treat his atherosclerosis, not his heart attack. Moreover, Dr. Fenster did not base his opinion on any physical change in Brown or any change in available medical procedures. Rather, Dr. Fenster stated that any improvement in Brown's heart was insignificant, and that he would recommend the same medications Dr. Phibbs recommended in 1995. There was, therefore, no material change in Brown's medical condition or treatment justifying a change in the award.

¶ 16 Respondents nonetheless argue that the first ALJ's award did not explicitly relate Brown's need for Zocor to his heart attack, and, thus, they argue that issue preclusion does not apply because the issue went undecided.[4] Although the first ALJ did not explicitly relate the need for Zocor to Brown's heart attack, that causal relationship was legally essential to the determination that the insurer was required to provide supportive care benefits including medication. *See Capuano,* 150 Ariz. at 226, 722 P.2d at 394 ("[S]upportive medical benefits ... are designed to prevent or reduce the *continuing symptoms of an industrial injury ....* ") (emphasis added). And, whether the ALJ explicitly stated it or not, that issue was necessarily decided by the award. *See Bayless,* 179 Ariz. at 440, 880 P.2d at 660 ("The party asserting preclusion ... 'is not limited to the formal record of the prior action,' and the proof of what was litigated and determined 'may involve elaborate processes of inference.'"), *quoting* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4405 at 38 (Supp.1993). Issue preclusion would therefore apply.

██ ¶ 17 Moreover, it is clear that the respondents were not litigating at the most recent hearing the issue of whether a change in condition alleviated Brown's need for Zocor. Rather, as respondents' attorney stated: "One of the problems of life is that we have to deal with the errors of the past." The respondents thus belatedly recognized that the first ALJ had incorrectly awarded supportive care medication to Brown because Dr. Phibbs had stated that such medication was unnecessary to treat the heart attack. But as previously stated, respondents did not seek review of that award, and it became final. *See* A.R.S. § 23-942(D). And, absent some change in Brown's physical condition or in medical procedures, *Stainless,* respondents insurer and employer are precluded from relitigating the supportive care issue merely by filing a notice of claim status. Preclusionary effect is given to prior awards not because they are correct but despite the fact they are incorrect. *See Gallegos v. Industrial Comm'n,* 144 Ariz. 1, 4, 695 P.2d 250, 253 (1985).

### CONCLUSION

¶ 18 The issue was precluded. We therefore set aside the award.

ESPINOSA, C.J., and DRUKE, J., concur.

---

4. The respondents at least implicitly concede that although the initial award was somewhat ambiguous, it did include Zocor. And they do not seek to justify the second award based on ambiguity of the first. *See Minghelli v. Industrial Comm'n,* 129 Ariz. 222, 225, 630 P.2d 45, 48 (App.1981).