244 P.3d 571

**BANK ONE CORPORATION,**
Petitioner Employer,

**ESIS/ACE USA (AZ), Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Doris V. Morris, Respondent Employee.**

No. 1 CA–IC 09–0028.

Court of Appeals of Arizona, Division 1, Department C.

Nov. 30, 2010.

Jones, Skelton & Hochuli P.L.C. By Gregory L. Folger and Lori L. Voepel, Phoenix, Attorneys for Petitioner Employer and Carrier.

The Industrial Commission of Arizona By Andrew Wade, Chief Counsel, Phoenix, Attorney for Respondent.

Wilmer & Testini P.L.C. By Charles Mark Wilmer, Jr., Phoenix, Attorneys for Respondent Employee.

## OPINION

BROWN, Judge.

¶ 1 This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review finding that

the respondent employee ("Claimant") is entitled to continuing supportive care. The petitioner employer, Bank One Corporation ("Bank One"), argues the administrative law judge ("ALJ") erred in concluding that *Brown v. Industrial Commission* precluded the ALJ from considering whether Claimant's medications should be modified based on a review clause included in a settlement agreement. 199 Ariz. 521, 19 P.3d 1237 (App. 2001). Based on the plain language of that agreement, which provides for annual review of Claimant's supportive care for "need and/or use," we set aside the award.

## BACKGROUND

¶ 2 While employed by Bank One, Claimant sustained a lower back injury on October 23, 2000. She filed a workers' compensation claim, which was accepted for benefits. Claimant initially received conservative medical treatment and then underwent lower back surgery. She eventually was released to return to work following an independent medical examination.

¶ 3 The petitioner carrier, ESIS/ACE USA ("ESIS"), closed the claim with an unscheduled permanent partial impairment, and the ICA entered its findings and award for no loss of earning capacity. Claimant timely protested the ICA's award, but before the parties litigated the claim, they entered into the settlement agreement. The agreement provided for annual supportive care for Claimant's lumbosacral injury, including epidural injections, anti-inflammatory and anti-depressant medications, muscle relaxers, narcotic pain medication, and medication for sleep enhancement. An ALJ issued a decision upon hearing and award approving the settlement agreement in August 2003.

¶ 4 Four years later, Claimant wrote to the ICA stating that ESIS was failing to adhere to the terms of her supportive care award. She then requested a hearing pursuant to

Arizona Revised Statutes ("A.R.S.") section 23–1061(J) (Supp.2009).[1] Six ICA hearings were held to permit testimony from Claimant, her treating orthopedic surgeon, psychiatrist, and pain management specialist. Two independent medical examiners, an orthopedist and a pain management specialist, also testified. Following these hearings, the ALJ entered an award finding that Claimant's supportive care award as entered in 2003 should remain unchanged. The ALJ based the award on his determination that under *Brown*, 199 Ariz. at 525, ¶ 17, 19 P.3d at 1241, ESIS was required to "show something more than merely a change in medical opinion in order to avoid the preclusive effect of a prior award." The award was summarily affirmed on administrative review and this timely special action followed.[2] This court has jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(2) (2003), 23–951(A) (1995),[3] and Arizona Rules of Procedure for Special Actions 10.

## DISCUSSION

¶ 5 Bank One argues the ALJ erred in finding that he was precluded from considering modification of Claimant's supportive care award under *Brown*. Bank One contends that *Brown* is inapplicable here because the award of supportive care had never been "actually litigated." Additionally, Bank One asserts that the settlement agreement shows the intent of the parties was to provide for regular review of the appropriateness of Claimant's supportive care benefits. In response, Claimant argues that her supportive care award cannot be relitigated unless there has been a change in her physical condition or a change in medical procedure. She therefore contends that her medications cannot be altered based solely on differing medical opinions about the proper course of treatment.

1. A.R.S. § 23–1061(J) provides that a claimant may request an investigation by the ICA into the payment of benefits the claimant believes she is owed but has not been paid.

2. Bank One and ESIS joined in the filing of this petition for special action. They also filed joint briefs in this court. For ease of reference, unless otherwise specified, we refer to them collectively as "Bank One."

3. We cite the current version of the applicable statutes when no revisions material to this decision have since occurred.

¶ 6 In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law, including the interpretation of a contract, de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App.2003); *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593, ¶ 9, 218 P.3d 1045, 1050 (App.2009).

¶ 7 The Arizona Workers' Compensation Act does not specifically authorize supportive care awards; instead, these awards are issued voluntarily by workers' compensation carriers "to prevent or reduce the continuing symptoms of an industrial injury after the injury has become stabilized." *Capuano v. Indus. Comm'n*, 150 Ariz. 224, 226, 722 P.2d 392, 394 (App.1986). In *Capuano*, the carrier issued two notices of supportive care providing for medication plus office visits. *Id.* at 225, 722 P.2d at 393. Each notice included a ninety-day protest clause and an annual review clause. *Id.* Two years later, the claimant's doctor requested authorization to alter the medications and increase the office visits, to which the carrier objected. *Id.* After the claimant requested a hearing under A.R.S. § 23–1061(J), the ALJ granted the request for additional supportive care. *Id.* at 225–26, 722 P.2d at 393–94. On appeal, we rejected the carrier's argument that the claimant's request was barred by res judicata. *Id.* at 226, 722 P.2d at 394. We held that an award of supportive care subject to annual review "does not determine with finality the effect of the claimant's original, industrially related condition upon a future continuing need for supportive care benefits." *Id.* We further concluded that a carrier's "voluntary payment of supportive care benefits does not bar its request for a later determination whether a claimant's current condition is still causally related to the industrial injury." *Id.* at 227, 722 P.2d at 395.

¶ 8 Fifteen years later, in *Brown*, we recognized an exception to the general rule that notices of supportive care do not bar subsequent adjustment to the benefits provided. 199 Ariz. at 524, ¶ 14, 19 P.3d at 1240. In that case, the claimant's entitlement to supportive care benefits was litigated and decided by an ALJ. *Id.* at 522, ¶ 2, 19 P.3d at 1238.

When the carrier subsequently terminated those benefits based on a new independent medical examination, the claimant protested. *Id.* at 523, ¶ 7, 19 P.3d at 1239. On appeal, we held:

Respondents did not seek review of ... [the ALJ's initial] award, [of supportive care] and it became final. And, absent some change in ... [claimant's] physical condition[,] or in medical procedures, ... respondents insurer and employer are precluded from relitigating the supportive care issue merely by filing a notice of claim status. Preclusionary effect is given to prior awards not because they are correct but despite the fact they are incorrect.

*Id.* at 525, ¶ 17, 19 P.3d at 1241 (citations omitted). Thus, we concluded that preclusion would apply if there is "merely a change in medical opinion" or the evidence presented is not "qualitatively different" from the prior evidence. *Id.* at 524, ¶ 14, 19 P.3d at 1240.

¶ 9 In this case, we find it unnecessary to determine whether Bank One's effort to modify Claimant's medication is barred by the issue preclusion exception noted in *Brown*. Instead, we conclude that the parties' rights and obligations relating to Claimant's supportive care benefits are controlled by the explicit language of the settlement agreement, which provides in relevant part:

SUPPORTIVE CARE

On applicant's October 23, 2000 lumbosacral injury claim, she shall be entitled to supportive care with Dr. Angelo Chirban. Said supportive care shall include 12 office visits per year, up to 6 physical therapy sessions per year, 3 epidural/pain management injections per year, replacement of corset and/or brace as ordered by Dr. Chirban. Dr. Chirban may order medications to include anti-inflammatories, one anti-depressant for pain, muscle relaxers, one narcotic, and one medication for sleep enhancement. Further, applicant shall be entitled to no more than one consultation visit per year to Dr. Zipnick if determined to be medically necessary by Dr. Chirban. *The supportive care on applicant's lumbo-*

*sacral claim shall be reviewable on an annual basis for need and/or use.*

(Emphasis added.)

 ¶ 10 "The validity and enforceability of stipulations and settlement agreements in workers' compensation cases must be determined according to contract principles." *Pac. W. Const. v. Indus. Comm'n,* 166 Ariz. 16, 19, 800 P.2d 3, 6 (App.1990). We follow the general principle that when parties bind themselves by a lawful contract, the terms of which are clear and unambiguous, we must give effect to the contract as written. *Figueroa,* 222 Ariz. at 593, ¶ 9, 218 P.3d at 1050. The plain language of the settlement agreement indicates that Claimant's supportive care award is subject to annual review "for need and/or use." Claimant entered into the binding agreement under circumstances in which she bargained for certain benefits and gave up others. She has not advanced any argument that she did not intend to be bound by the annual review clause. Thus, we find that the parties intended to provide for periodic review of Claimant's supportive care award. *See Tabler v. Indus. Comm'n,* 202 Ariz. 518, 520–21, ¶ 8, 47 P.3d 1156, 1158–59 (App.2002) (noting that parties must "intend to be bound" in order for an enforceable contract to exist).

¶ 11 Moreover, we cannot ignore the plain language of the annual review clause, because we must presume that the parties intended that it have meaning. *See Kirkeby–Natus Corp. v. Kramlich,* 12 Ariz.App. 376, 382, 470 P.2d 696, 702 (1970) ("It is true that a construction which gives effect to all portions of a contract is to be preferred to an interpretation which leaves one or some parts without effect."); *Cardi Am. Corp. v. All Am. House & Apartment Movers, L.L.C.,* 221 Ariz. 85, 87, ¶ 9, 210 P.3d 1256, 1258 (App.2009) (presuming that parties would not have included an ineffective clause in an agreement). Absent such language, the parties arguably could have been subject to the preclusion standard discussed in *Brown.* They specifically agreed, however, that Claimant's supportive care award would be subject to review on an annual basis for need and/or use.

¶ 12 Because the ALJ believed he was precluded from reconsidering Claimant's supportive care award, he did not resolve the medical conflicts among the testifying doctors as to the appropriate type of ongoing supportive care. *See Perry v. Indus. Comm'n,* 112 Ariz. 397, 398, 542 P.2d 1096, 1097 (1975) (when medical testimony conflicts, it is the ALJ's duty to resolve those conflicts). Claimant, her treating physicians, and the independent medical examiners all testified that Claimant consistently used her supportive care award over the previous four and a half years. Although there appears to be unanimity among the testifying physicians with regard to Claimant's continuing need for supportive care, the physicians disagree over the type of supportive care required, and more specifically, over the use of "opioid" medications to treat Claimant's ongoing back pain. Resolution of that disagreement is governed by the settlement agreement, which gives the parties the right to seek a determination as to the continuing appropriateness and parameters of the supportive care.

## CONCLUSION

¶ 13 For the foregoing reasons, we set aside the award.

CONCURRING: PATRICK IRVINE, Presiding Judge, and JOHN C. GEMMILL, Judge.