NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

FRANKIE MARQUEZ, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

TCI TRANSPORTATION, *Respondent Employer,*

PROTECTIVE INSURANCE COMPANY, *Respondent Carrier.*

No. 1 CA-IC 19-0005
FILED 4-23-2020

Special Action – Industrial Commission
ICA Claim No. 20170-610364
Carrier Claim No. WC-00003174
The Honorable Rachel C. Morgan, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Snow Carpio & Weekley, PLC, Phoenix
By Chad T. Snow
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano Testini
*Counsel for Respondent ICA*

Jones, Skelton & Hochuli, PLC, Phoenix
By Gregory L. Folger, Eileen Dennis Gilbride
*Counsel for Respondent Employer and Respondent Carrier*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Chief Judge Peter B. Swann joined.

---

**C A T T A N I**, Judge:

¶1 Frankie Marquez seeks special action review of an Industrial Commission of Arizona award and decision upon review finding his industrial injury to be medically stationary and closing his workers' compensation claim. For reasons that follow, we affirm the award.

**FACTS AND PROCEDURAL BACKGROUND**

¶2 Marquez worked as a diesel-truck mechanic at Transportation Commodities Incorporated. In October 2016, Marquez felt pain on his right side while removing a battery from a vehicle. He promptly sought medical care for right-side neck, arm, and leg pain and weakness. Dr. Christopher Huston pursued conservative treatments including anti-inflammatories and a therapeutic injection for radiculitis at the C5 vertebra. When that treatment did not alleviate his pain, Marquez was referred to Dr. William Stevens, a board-certified orthopedic spine surgeon. Dr. Stevens diagnosed cervical stenosis with myelopathy (cord compression) at C3-4 and recommended cervical decompression and fusion surgery, although Marquez was unable to undergo the surgery at that time.

¶3 In February 2017, Marquez filed a workers' compensation claim related to the October 2016 injury. The carrier initially denied compensability, but Marquez challenged the denial, and an administrative law judge ("ALJ") ultimately rendered a decision in his favor. In that November 2017 decision, the ALJ found that Marquez had sustained a compensable injury and awarded benefits until the condition became medically stationary.

2

¶4 While the compensability litigation proceeded, the carrier sent Marquez to be examined by Dr. Dennis Crandall, a board-certified orthopedic spine surgeon. Dr. Crandall concluded that Marquez's industrial incident had resulted only in a cervical strain, and his examination revealed no sign of radiculopathy or myelopathy. Dr. Crandall diagnosed several other degenerative conditions of the spine unrelated to the workplace injury, and he concluded that Marquez's condition resulting from the industrial injury had fully resolved and was medically stationary with no permanent impairment as of his June 19, 2017 examination.

¶5 Marquez subsequently sought treatment from Dr. Kirk Puttlitz, a pain management physician, who diagnosed a cervical disc disorder with radiculopathy at C5-6 and myelopathy at C6-7 and attempted pain management through injections and physical therapy.

¶6 In December 2017 (the month after the administrative decision on compensability), the carrier closed Marquez's claim effective June 19, 2017 based on Dr. Crandall's evaluation. Marquez challenged the closure.

¶7 The carrier then sent Marquez for a follow-up examination with Dr. Crandall, who reaffirmed his prior conclusions. The carrier also sent Marquez to be examined by Dr. Leo Khan, a board-certified neurologist, to assess Marquez's reports of headaches. Dr. Khan concluded that there was no causal relationship between Marquez's headaches and his industrial injury and that, neurologically, Marquez was medically stationary with no permanent impairment. Dr. Khan further found no evidence of cervical radiculopathy or myelopathy and concurred in Dr. Crandall's opinion that Marquez had most likely suffered a cervical strain resulting from the industrial incident.

¶8 Around that time, Dr. Puttlitz referred Marquez to Dr. David Jackson, a board-certified orthopedic spine surgeon. Dr. Jackson diagnosed a cervical disc disorder with myelopathy and recommended cervical decompression and fusion surgery to address cord compression at C3-4. Dr. Jackson ultimately performed the surgery in May 2018.

¶9 Meanwhile, Marquez's challenge to the carrier's closure of his claim proceeded to a hearing at which, in addition to considering Marquez's medical records and reports, the ALJ heard testimony from Marquez, Dr. Jackson, Dr. Kahn, and Dr. Crandall.

**¶10**      Dr. Jackson testified on Marquez's behalf. Dr. Jackson explained his finding that Marquez had a disc herniation with stenosis and cord compression at C3-4, which required the fusion surgery he performed in May 2018. Because Marquez's right-side neck and arm symptoms began soon after his industrial incident, Dr. Jackson opined that the industrial event had caused Marquez's ongoing symptoms. Dr. Jackson further explained that the fusion surgery he performed was "more likely than not" related to the industrial injury and was medically necessary to address Marquez's industrially caused symptoms.

**¶11**      The carrier presented testimony from Dr. Crandall and Dr. Kahn. Dr. Crandall testified that, although Marquez's imaging studies showed degenerative changes of the spinal column, his physical exam showed no signs of spinal cord irritation. He opined that the industrial incident had caused a cervical strain that had resolved by the time of his June 2017 exam and that Marquez's other symptoms and conditions were unrelated to the workplace injury. Dr. Crandall concluded that, as related to the industrial injury, Marquez was medically stationary with no impairment. Dr. Kahn testified that Marquez's headaches were unrelated to the industrial incident, and he further agreed with Dr. Crandall that Marquez's physical exam showed no sign of cervical radiculopathy or myelopathy and that any disc issue at C3-4 was unrelated to the workplace injury.

**¶12**      The ALJ considered the conflicting testimony, then found that Marquez's industrial injury was medically stationary without permanent impairment as of June 19, 2017. Marquez requested administrative review, and the ALJ affirmed the decision upon review.

**¶13**      Marquez timely filed this statutory special action, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(2), 23-951(A), and Rule 10 of the Arizona Rules of Procedure for Special Actions.

## DISCUSSION

**¶14**      In reviewing workers' compensation awards, we defer to the ALJ's factual findings but independently review the ALJ's legal conclusions. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We will affirm an ALJ's award "if it is reasonably supported by the evidence after reviewing the evidence in a light most favorable to sustaining the award." *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

**¶15**      For a workers' compensation claim to be compensable, the claimant must prove that his injury was causally connected to his

employment.  A.R.S. § 23-1021; *Hypl v. Indus. Comm'n*, 210 Ariz. 381, 383–84, ¶ 6 (App. 2005).  Similarly, the claimant must prove continuing effects resulting from the industrial injury to support continuing benefits. *Capuano v. Indus. Comm'n*, 150 Ariz. 224, 226 (App. 1986).

**¶16**    When a medical condition or its cause is not clearly apparent to a lay person, the condition and its causal relationship to the industrial injury must be established to a reasonable medical probability by expert medical evidence.  *Payne v. Indus. Comm'n*, 136 Ariz. 105, 108 (1983).  The ALJ has primary responsibility to resolve conflicts in medical opinion evidence. *Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988); *Kaibab Indus. v. Indus. Comm'n*, 196 Ariz. 601, 609, ¶ 25 (App. 2000).  We defer to the ALJ's resolution of conflicting evidence and will affirm the ALJ's findings if supported by any reasonable theory of the evidence.  *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398–99 (1975).

**¶17**    Marquez argues that the ALJ erred by crediting the opinions offered by Dr. Crandall and Dr. Kahn over what Marquez characterizes as "the overwhelming weight of the medical evidence."  He asserts that four doctors—Dr. Huston, Dr. Stevens, Dr. Puttlitz, and Dr. Jackson—diagnosed severe cervical problems related to his workplace injury.  But these diagnoses were not uniform.  Although both Dr. Stevens and Dr. Jackson agreed that cord compression at C3-4 required fusion surgery, Dr. Huston diagnosed a different condition (radiculitis) at a different vertebra (C5) and Dr. Puttlitz diagnosed problems at still different locations (radiculopathy at C5-6 and myelopathy at C6-7).  Moreover, while Dr. Jackson testified that the C3-4 issue was causally linked to Marquez's industrial injury, none of the other doctors squarely reached the issue of causation.  Marquez's argument acknowledges as much by urging that all four doctors "implicitly related" the cervical problems to the workplace injury.

**¶18**    Marquez further asserts the ALJ erred by failing to acknowledge that Dr. Stevens's diagnosis, rendered just a few months after Marquez's injury, corroborated Dr. Jackson's later diagnosis.  Not only do we presume that the ALJ considers all relevant evidence, *see Perry*, 112 Ariz. at 398, but here the ALJ expressly considered Dr. Stevens's opinion, noting the similarities in Marquez's subjective complaints presented to both Dr. Stevens and Dr. Jackson as well as the cervical decompression and fusion surgery recommended by both.

**¶19**    Marquez also contends that the ALJ erred by giving too much weight to Dr. Crandall's opinion.  He urges that Dr. Crandall's testimony was undermined by a critical factual inaccuracy regarding the other

doctors' findings and diagnoses. Dr. Crandall testified that Dr. Jackson's "entire history and physical exam expressly states [Marquez] doesn't have myelopathy" and that Dr. Stevens's records reflect that "he didn't find any symptoms or signs of myelopathy either." However, Dr. Jackson and Dr. Stevens diagnosed a "cervical disc disorder with myelopathy" and "other spondylosis with myelopathy," respectively.

¶20 But Dr. Crandall's testimony arguably did not mistake Dr. Jackson's and Dr. Stevens's diagnoses, but rather focused on whether their reports noted findings from physical examinations (rather than imaging studies) that would support those myelopathy diagnoses. Additionally, although in some circumstances "medical testimony can be so weakened by proof of an inaccurate factual background that the testimony cannot be said to constitute 'substantial evidence,'" *Desert Insul. v. Indus. Comm'n*, 134 Ariz. 148, 151 (App. 1982) (citation omitted), medical testimony is only compromised if the factual inaccuracy is material or significant to the doctor's medical opinion. *See Fry's Food Stores v. Indus. Comm'n*, 161 Ariz. 119, 122 (1989). And here, Dr. Crandall testified that he developed his medical opinion based on his own examination of Marquez, and that his retroactive review of other doctors' reports did not affect his medical opinion.

¶21 Marquez also suggests that the ALJ erroneously sustained objections to his counsel's cross-examination of Dr. Crandall, preventing him from highlighting that Dr. Crandall's opinions lacked foundation. But Marquez neither specifies any objections that should have been overruled nor describes what evidence would otherwise have come to light. Moreover, the record shows that the ALJ afforded Marquez substantial latitude to explore Dr. Crandall's familiarity with and impression of Dr. Stevens's report and diagnosis, even after sustaining objections to requests that Dr. Crandall weigh in on Dr. Stevens's competence. Marquez has not shown that the ALJ abused her discretion in deciding evidentiary matters. *See Toto v. Indus. Comm'n*, 144 Ariz. 508, 514 (App. 1985).

¶22 At its core, Marquez's argument simply asks this court to reweigh the medical evidence, but we defer to the ALJ's resolution of conflicting medical opinions. *See Perry*, 112 Ariz. at 398–99. Dr. Crandall and Dr. Kahn opined that Marquez's industrial incident resulted only in a cervical strain that had since resolved, leaving him medically stationary with no permanent impairment. Although Marquez presented contrary medical evidence, the ALJ's adoption of Dr. Crandall and Dr. Kahn's opinions instead was not "wholly unreasonable," so we will not displace

the ALJ's assessment. *See Stainless Specialty Mfg. Co. v. Indus. Comm'n*, 144 Ariz. 12, 19 (1985).

¶23 Finally, Marquez asserts that the ALJ erred by ignoring the res judicata effect of the November 2017 decision as to the nature and extent of his injury. Although a final workers' compensation award has both issue and claim preclusive effect, *see Circle K Corp. v. Indus. Comm'n*, 179 Ariz. 422, 428 (App. 1993), here, the November 2017 award decided compensability — i.e., that Marquez suffered an injury and that the injury was caused by his work, *see Yates v. Indus. Comm'n*, 116 Ariz. 125, 127 (App. 1977) — but did not reach the extent or permanence of the harm caused. Even Dr. Crandall's opinion presupposed an industrial injury but determined that the incident only resulted in a temporary cervical strain, not a more serious or permanent condition. And Marquez's reliance on an implicit finding of his credibility in the November 2017 decision does not undermine the ALJ's assessment in this proceeding of conflicting medical opinions regarding matters lying peculiarly within the knowledge of medical doctors. *See Stephens v. Indus. Comm'n*, 114 Ariz. 92, 95 (App. 1977). Thus, the November 2017 decision addressed different issues and did not resolve medical questions presented in the current proceeding about the extent of Marquez's injury or his need for ongoing treatment. *Cf. Capuano*, 150 Ariz. at 226.

## CONCLUSION

¶24 For the foregoing reasons, we affirm.

