NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

KEVIN JONES, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

DAISY MOUNTAIN FIRE DISTRICT, *Respondent Employer*,

COPPERPOINT INSURANCE COMPANY, *Respondent Carrier.*

No. 1 CA-IC 20-0022
FILED 4-6-2021

---

Special Action - Industrial Commission
ICA Claim No. 96092-893057
Carrier Claim No. 96-10498
The Honorable Amy L. Foster, Administrative Law Judge

**AWARD AFFIRMED**

---

COUNSEL

Lawrence P. Nicholls PC, Phoenix
By Lawrence P. Nicholls

Sarkisov & Roesch PLLC, Phoenix
By George V. Sarkisov
*Co-Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

CopperPoint Insurance Company, Phoenix
By Chiko F. Swiney
*Counsel for Respondent Employer and Carrier*

---

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Cynthia J. Bailey joined.

---

**C A T T A N I**, Judge:

¶1 Kevin Jones challenges an Industrial Commission of Arizona award and decision upon review denying him ongoing supportive care related to a 1996 industrial injury. For reasons that follow, we affirm the award.

### FACTS AND PROCEDURAL BACKGROUND

¶2 Jones was exposed to an unknown white powder, later reported to be an "organophosphate," while working as a firefighter in 1996. His treating physician, Dr. Michael Gray, diagnosed (1) "[o]rganophosphate induced delayed onset vocal cord paralysis, with paradoxical closing of the cords on inspiration, secondary to organophosphate induced delayed onset neuropathy involving the laryngeal nerve," (2) "reactive airways disease with very severe small airway obstruction, moderate large airway obstruction, and moderate restrictive respiratory defect," (3) "[p]roinflammatory immune toxicity state secondary to organophosphate exposure," and (4) "[t]oxic encephalopathy confirmed by limited neuropsychological testing."

¶3 Jones's claim was closed in 1999 with an award for permanent and total disability. Around the same time, the predecessor to carrier CopperPoint Insurance Company issued a notice authorizing supportive care, to be reviewed annually, including four to six doctor visits per year plus medications and lab work as managed by Dr. Gray. Over the next 20 years, Dr. Gray had Jones on a regimen of quarterly blood draws along with medications and supplements designed to remove toxins from his system

and replace vitamins that the cleansing removes, and CopperPoint covered this supportive care program.

¶4 In 2019, however, CopperPoint notified Jones that the blood draws and laboratory testing would no longer be covered. Jones requested relief under A.R.S. § 23-1061(J) on the basis that CopperPoint's decision denied him benefits to which he was entitled, later asserting that CopperPoint was estopped from denying responsibility for his medical condition. CopperPoint denied wrongdoing and sent Jones to be evaluated by three doctors, including toxicologist Dr. Daniel Brooks.

¶5 The case went to a hearing before an administrative law judge ("ALJ") on the issue of whether supportive care related to the 1999 diagnoses remained appropriate. Jones testified about the exposure incident and his condition over the following 20 years. Dr. Gray testified about the care he had provided over that period and opined that Jones continued to suffer the effects of neurotoxicity stemming from his exposure to an organophosphate. Dr. Gray recommended as medically necessary continued supportive care including bronchodilators, medications, periodic pulmonary function testing, a toxin cleansing protocol, and over-the-counter supplements, with lab work two to four times per year.

¶6 Dr. Brooks testified to the contrary that Jones no longer suffered symptoms related to the industrial injury and thus did not require supportive care. Dr. Brooks explained that during the July 2019 evaluation, Jones reported ongoing subjective symptoms, but a physical examination showed no unusual objective findings. Dr. Brooks acknowledged that Jones initially had vocal cord dysfunction but opined that all resulting symptoms had since resolved, and he testified that none of the care provided by Dr. Gray was medically necessary or related to the industrial injury. Dr. Brooks expressly disagreed with Dr. Gray's 1999 diagnoses and testified that the treatment regimen overseen by Dr. Gray did not comport with the standard of care. Dr. Brooks also testified, however, that even assuming the 1999 diagnoses were accurate, no related symptoms remained active and no ongoing supportive care was necessary.

¶7 The ALJ resolved the conflict in medical evidence by adopting Dr. Brooks's opinion as more credible and thus issued an award denying further supportive care. Jones requested administrative review, again asserting that CopperPoint was precluded from denying his need for supportive care, but the ALJ affirmed the award. Jones petitioned for review, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(2), 23-951(A), and Rule 10 of the Arizona Rules of Procedure for Special Actions.

3

**DISCUSSION**

**¶8**    On review of a workers' compensation award, we defer to the ALJ's factual findings but independently review the ALJ's legal conclusions. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We will affirm if, considering the evidence in the light most favorable to upholding the decision, reasonable evidence supports the award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

**¶9**    Jones first argues that because his diagnoses were litigated to a final judgment in 1999 and the carrier issued a notice providing supportive care at that time, CopperPoint is now precluded from disputing his need for supportive care related to his industrial injury. While principles of preclusion apply to workers' compensation awards generally, *see Circle K Corp. v. Indus. Comm'n*, 179 Ariz. 422, 425–27 (App. 1993), preclusion only bars relitigation of facts or claims that have been actually litigated and determined by a valid final judgment. *Red Bluff Mines, Inc. v. Indus. Comm'n*, 144 Ariz. 199, 204–05 (App. 1984). Here, because the carrier voluntarily issued a notice providing supportive care, the issue of supportive care was never litigated.

**¶10**    Contrary to Jones's contention, the unprotested notice of supportive care—which was expressly subject to annual review—did not become a final adjudication entitled to preclusive effect. *See Capuano v. Indus. Comm'n*, 150 Ariz. 224, 226–27 (App. 1986) (contrasting notices of claim status, which become final adjudications and res judicata under § 23-947(B) if not timely protested, with notices of supportive care, which "may be reviewed and adjusted at any time, under A.R.S § 23-1061(J), without resort to the formal reopening procedures required to alter notices of claim status"); *see also Bank One Corp. v. Indus. Comm'n*, 226 Ariz. 134, 136, ¶ 7 (App. 2010). CopperPoint's voluntary payment of supportive care subject to annual review did not determine with finality that Jones's industrial injury would require supportive care forever. *See Capuano*, 150 Ariz. at 226–27.

**¶11**    Nevertheless, Jones argues that preclusion applies here under *Brown v. Industrial Commission*, 199 Ariz. 521 (App. 2001), which recognized an exception to the general rule that notices of supportive care do not bar later adjustment. *Id.* at 524, ¶ 14. But *Brown* addressed finality and preclusion when entitlement to supportive care benefits was in fact litigated and decided by an ALJ. *See id.* at 522–23, ¶¶ 3, 6; *see also Bank One*, 226 Ariz. at 136, ¶ 8. Jones's entitlement to supportive care was not previously litigated; his reliance on *Brown* is thus misplaced.

**¶12**      Finally, Jones contends that the ALJ erred by adopting Dr. Brooks's opinion because it was based on a faulty foundation.  Jones highlights Dr. Brooks's disagreement with Dr. Gray's long-accepted diagnoses from 1999 and asserts that this disagreement fatally undermines Dr. Brooks's opinion that no ongoing supportive care was necessary.  *See Desert Insulations, Inc. v. Indus. Comm'n*, 134 Ariz. 148, 151 (App. 1982) (recognizing that an underlying material factual inaccuracy may undermine medical testimony).  But although Dr. Brooks did disagree with the initial diagnoses, he also testified that even assuming the 1999 diagnoses were accurate, no further supportive care was necessary.  The record provides an adequate basis for Dr. Brooks's opinion, based on his records review and physical examination, that Jones no longer suffered active symptoms related to the industrial injury necessitating supportive care.  The ALJ thus had a reasonable basis to adopt Dr. Brooks's opinion over Dr. Gray's, *see Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988); *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398–99 (1975), and we do not reweigh the evidence on appeal.  *Salt River Project v. Indus. Comm'n*, 128 Ariz. 541, 544 (1981).

## CONCLUSION

**¶13**      The award is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AA