NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JOSIE BROWN, *Petitioner Employee*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

AZ FOUNDATION FOR THE HANDICAPPED, *Respondent Employer*,

COPPERPOINT INSURANCE CO, *Respondent Carrier.*

No. 1 CA-IC 20-0050
FILED 1-4-2022

Special Action - Industrial Commission
ICA Claim No. 20131-770258
Carrier Claim No. 1302445
The Honorable Paula R. Eaton, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Snow Carpio & Weekley PLC, Phoenix
By Erica Rose Gonzalez-Melendez
*Counsel for Petitioner Employee*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Industrial Commission of Arizona*

CopperPoint Insurance Companies, Phoenix
By Sharon M. Hensley
*Counsel for Respondent Employer and Carrier*

---

**MEMORANDUM DECISION**

Chief Judge Kent E. Cattani delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Brian Y. Furuya joined.

---

**C A T T A N I**, Chief Judge:

**¶1**          Josie Brown challenges an Industrial Commission of Arizona award and decision upon review terminating her supportive care. For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**          Brown hurt her back in an on-the-job car accident in 2013. Carrier CopperPoint Insurance Co. accepted her workers' compensation claim. Brown's treatment over the next few years included two spinal fusion surgeries along with physical therapy, injections, and medication. The second spinal fusion was successful, but Brown continued to complain of pain.

**¶3**          CopperPoint closed Brown's claim with a permanent disability in 2015 and concurrently issued a notice of supportive care. The supportive care notice authorized pain-management medication and quarterly appointments with a pain-management specialist, as well as twice-yearly visits with her treating orthopedist. The notice specified that supportive care would be subject to annual review and could be closed if not used over the course of a year.

**¶4**          Brown opposed closure and, in the alternative, asserted that the supportive care authorized was insufficient. After an evidentiary hearing, an administrative law judge ("ALJ") issued an award in April 2017 confirming closure. Although Brown had also challenged supportive care, the ALJ declined to rule on that issue, noting in a footnote that the issue of supportive care had not been adequately developed during the hearing:

> It would appear appropriate that applicant Brown be
> provided supportive medical maintenance benefits as a result

2

of the subject industrial injury. However, the nature and
extent of that supportive care was not addressed sufficiently
in this proceeding for any finding to be made.

Thereafter, supportive care continued as stated in the 2015 notice without
modification.

**¶5** In May 2019, Brown filed a petition to reopen seeking
approval for a spinal cord stimulator, which CopperPoint denied. At
CopperPoint's request, Brown was examined by a different orthopedist and
pain-management specialist, after which CopperPoint issued a new notice
terminating all supportive care after a 60-day period to wean Brown off of
oxycodone and gabapentin. Brown protested, and the issues of reopening
and supportive care were consolidated for hearing.

**¶6** Brown, her treating orthopedist and pain-management
doctors, as well as the orthopedist and pain-management doctors who
examined her at CopperPoint's request all testified at the evidentiary
hearing. The examining doctors opined that no further supportive care was
necessary, specifically noting no objective findings correlating to Brown's
subjective reports of pain, no need for follow up with an orthopedist after
the successful fusion, and no basis for continuing Brown's pain-
management regimen (beyond weaning her off her current medications)
without underlying objective findings. Brown's treating orthopedist
acknowledged findings indicating some nonorganic source for her
subjective pain complaints and agreed with weaning her off narcotics
relative to her back pain, but recommended continuing pain medication
plus epidural injections and possibly physical therapy for her leg pain.
Brown's treating pain-management specialist disagreed vehemently with
the examining doctors, opining that Brown needed to continue her current
course of pain medication and possibly add authorization for an epidural
injection once or twice per year.

**¶7** The ALJ credited the opinions of the examining doctors over
those of Brown's treating physicians and entered an award denying
reopening and terminating supportive care after a six-week weaning
period. Brown requested administrative review, arguing that the 2015
supportive care award was final and entitled to preclusive effect, meaning
that it could not be modified or terminated without a change in Brown's
physical condition or applicable medical procedures—neither of which had
been shown. The ALJ summarily affirmed the award.

¶8            Brown petitioned for review, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(2), 23-951(A), and Rule 10 of the Arizona Rules of Procedure for Special Actions.

## DISCUSSION

¶9            On review of a workers' compensation award, we defer to the ALJ's factual findings but independently review questions of law. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We will affirm if, considering the evidence in the light most favorable to upholding the decision, reasonable evidence supports the award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

¶10           Brown argues the 2015 supportive care notice was entitled to preclusive effect, so the ALJ erred by permitting CopperPoint's notice modifying and terminating supportive care in 2019 without proof of a change in Brown's physical condition or applicable medical procedures. CopperPoint counters that Brown waived reliance on issue preclusion by failing to timely raise it as a defense, and that the 2019 supportive care notice was proper in any event. Waiver notwithstanding, Brown's challenge fails because the 2015 supportive care notice was not fully litigated, and the record supports the ALJ's confirmation of the 2019 notice.

¶11           While principles of preclusion apply to workers' compensation awards generally, *see Circle K Corp. v. Indus. Comm'n*, 179 Ariz. 422, 425–27 (App. 1993), issue preclusion only bars relitigation of facts or claims that have been actually litigated and determined by a valid final judgment. *Red Bluff Mines, Inc. v. Indus. Comm'n*, 144 Ariz. 199, 204–05 (App. 1984). Claimants are entitled to "reasonably required" medical treatment, *see* A.R.S. § 23-1062(A), and workers' compensation carriers may voluntarily issue supportive care notices to mitigate continuing symptoms even after an industrial injury becomes stationary and the claim is closed. *Capuano v. Indus. Comm'n*, 150 Ariz. 224, 226 (App. 1986). But such supportive care notices—particularly those subject to annual review— generally do not represent final determinations of the claimant's future need for supportive care and instead "may be reviewed and adjusted at any time." *Id.* at 226–27; *see also Bank One Corp. v. Indus. Comm'n*, 226 Ariz. 134, 136, ¶ 7 (App. 2010). Thus, standing alone, CopperPoint's 2015 supportive care notice, which expressly called for annual review, was not a final determination entitled to preclusive effect.

¶12           Brown argues, however, that the 2015 supportive care notice was incorporated into the ALJ's April 2017 award, so issue preclusion

4

applies. She relies on authority in which we recognized an exception to the general rule (that is, supportive care may be adjusted) that applies once entitlement to supportive care benefits is in fact fully litigated and ultimately decided by an ALJ. *Brown v. Indus. Comm'n*, 199 Ariz. 521, 522–24, ¶¶ 3, 6, 14 (App. 2001); *see also Bank One*, 226 Ariz. at 136, ¶ 8. At that point, a change in physical condition or applicable treatment—not just a change in medical opinion—is necessary to override the preclusive effect of an ALJ's determination. *Brown*, 199 Ariz. at 524, ¶ 14.

¶13        Here, the issue of supportive care was not fully litigated and decided in the April 2017 award. Brown protested sufficiency of the 2015 supportive care notice along with closure of her claim, but the award makes clear that only closure was actually addressed. Although the April 2017 award notes that supportive care seemed appropriate, the ALJ explained that "the nature and extent of that supportive care was not addressed sufficiently in this proceeding for any finding to be made." There is thus no ruling on supportive care that is entitled to preclusive effect.

¶14        Finally, although Brown urges that she remained entitled to at least *some* supportive care benefits, the record supports the ALJ's ruling terminating supportive care. Brown's treating doctors both supported continuing benefits in some form, but the orthopedist and pain-management physicians who evaluated her at CopperPoint's request testified that no continuing care was necessary (aside from a short period to wean off her existing pain medications). The ALJ was free to credit the opinions of the examining doctors over those of Brown's treating physicians, *see Carousel Snack Bar v. Indus. Comm'n*, 156 Ariz. 43, 46 (1988); *Perry v. Indus. Comm'n*, 112 Ariz. 397, 398–99 (1975), and we do not reweigh the evidence on appeal. *Salt River Project v. Indus. Comm'n*, 128 Ariz. 541, 544 (1981).

## CONCLUSION

¶15        We affirm the award.



AMY M. WOOD • Clerk of the Court
FILED:    AA